# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| ARCLIN US HOLDINGS INC., et al., | Bankr. Case No. 09-12628 (KJC) |
| Debtors.[1] | Jointly Administered |
| | **Re: Dkt. No. 6** |

## FINAL ORDER PURSUANT TO BANKRUPTCY CODE SECTIONS 105, 361, 362, 363 AND 364 (I) AUTHORIZING DEBTORS TO OBTAIN POSTPETITION FINANCING; (II) AUTHORIZING USE OF CASH COLLATERAL; (III) GRANTING LIENS AND SUPER-PRIORITY CLAIMS; AND (IV) GRANTING ADEQUATE PROTECTION TO THE PREPETITION AGENTS AND PREPETITION LENDERS

This matter is before the Court on the motion (the "**Motion**"), dated July 27, 2009 (the "**Petition Date**") filed by Arclin US Holdings, Inc. ("**Arclin US**") and its domestic subsidiaries (collectively, the "**Debtors**"), each as debtors and debtors-in-possession in the above-captioned chapter 11 cases (the "**Cases**") pursuant to Sections 105, 361, 362, 363, 364(c)(1), 364(c)(2), 364(c)(3), 364(d) and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (as amended, the "**Bankruptcy Code**"), Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rules 2002-1(b), 4001-2, 9006-1 and 9013-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), requesting entry of an order (the "**Final Order**"):

    (i)    authorizing the Debtors to obtain secured postpetition financing on a superpriority basis (the "**DIP Facility**"), and for Debtors to guarantee the payment of each of the Debtors', and Arclin Canada Ltd.'s ("**Arclin Canada**") and certain of its Canadian affiliates (collectively, the

---

[1] The Debtors are Arclin US Holdings Inc., Marmorandum LLC, Arclin Chemicals Holding Inc., Arclin Industries U.S.A. Inc., Arclin Fort Smith Inc., Arclin U.S.A. Inc., and Arclin Surfaces Inc.

"**Canadian Debtors**")[2] obligations thereunder and under this Final Order, including, without limitation, principal, accrued interest, unpaid fees and expenses, and all other amounts due from time to time under the documents referred to below (collectively, the "**Postpetition Indebtedness**") pursuant to that certain Senior Secured, Super-Priority Debtor-in-Possession Credit Agreement (the "**DIP Facility Agreement**") by and between Arclin US and Arclin Canada (the "**Borrowers**"), the Guarantors party thereto, UBS AG, Stamford Branch ("**UBS AG**"), as administrative agent (the "**DIP Administrative Agent**"), UBS AG as collateral agent (the "**DIP Collateral Agent**," together with the DIP Administrative Agent, the "**DIP Agent**"), UBS Securities LLC ("**UBSS**") as Bookmanager and Syndication Agent, UBSS and Black Diamond Commercial Finance, L.L.C., as Joint Lead Arrangers (collectively, the "**DIP Arrangers**") and the lenders party thereto (collectively, the "**DIP Lenders**") to (A) fund the working capital requirements and other financing needs of the Debtors during the pendency of the Cases, (B) pay certain transaction fees and other costs and expenses of administration of the Cases, (C) pay the Prepetition Agents and Prepetition Lenders (each as defined below) Adequate Protection (as defined below) and (D) pay fees and expenses (including, without limitation, reasonable attorneys' fees and expenses) owed to the DIP Agent and the DIP Arrangers under the DIP Facility and the other DIP Facility Documents (as defined below);

(ii)   authorizing the Debtors to execute and enter into the DIP Facility Documents and to perform such other and further acts as may be required in connection with the DIP Facility Documents;

---

[2]   The CCAA Debtors are: Arclin Canada Ltd., Arclin Holdings I L.P., Arclin Holdings II L.P., Arclin Holdings III Inc., Arclin Holdings IV Inc., Arclin Management Holdings Inc., Arclin Holdings GP I Inc., and Arclin Holdings GP II Inc. It should be noted that the CCAA does not apply to partnerships; however, because the CCAA Debtors have requested that the Canadian Court extend the protections afforded under the CCAA to Arclin Holdings I L.P. and Arclin Holdings II L.P., those entities have been included in the definition of Canadian Debtors herein for ease of reference.

{00001264. }

2

(iii)    requesting that the financing under the DIP Facility:

a.    constitute an allowed super-priority administrative expense claim (the "**DIP Facility Superpriority Claim**") having priority over any and all administrative expenses, including, without limitation, the kind specified in sections 105, 326, 328, 330, 331, 506(c), 507(a), 507(b), 726, 1113 or 1114 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other consensual or non-consensual lien, levy or attachment, which DIP Facility Superpriority Claim shall be payable from and have recourse to all prepetition and postpetition property of the Debtors as provided for herein, except for the Carve-Out (as defined below); and

b.    be secured by (i) valid, binding, continuing, enforceable, fully perfected and unavoidable first priority senior priming security interest in, and liens upon (the "**DIP Facility Liens**"), all tangible and intangible assets (including, without limitation, accounts receivable, inventory, equipment, general intangibles, intercompany notes, investment property, intellectual property, real property, cash and proceeds of the foregoing) of the Debtors (other than (w) Avoidance Actions (defined below) and the proceeds thereof, (x) Excluded Property (as defined below), (y) the 30% of the Series A shares of Arclin Mexico S.A. de C.V held by Arclin Mexico Holdings, S.A. de C.V. and (z) the 100% of the Series B shares of Arclin Mexico S.A. de C.V. held by Arclin Mexican Holdings, S.A. de C.V.), wherever located, now or hereafter owned, and to the extent not otherwise included, all proceeds, tort claims, insurance claims and other rights to payments not otherwise included in the foregoing and products of the foregoing and all accessions to, substitutions and replacements for, and rents and profits of, each of the foregoing (collectively, the "**Collateral**") and (ii) junior liens (the "**Junior DIP Liens**") on all other assets of the Debtors (other than the Excluded Property) that are subject to valid and

perfected liens in existence as of the Petition Date or to valid liens in existence as of the Petition Date that are perfected subsequent to the Petition Date as permitted by the Bankruptcy Code (other than the liens, claims and interests of the Prepetition Secured Parties and any Replacement Liens (each as defined below)), which such DIP Facility Liens and Junior DIP Liens shall be subject only to, (A) the Permitted Prior Liens (as defined below) in the Collateral (other than the liens, claims and interests of the Prepetition Secured Parties and any Replacement Liens and other than any avoidance actions under Chapter 5 of the Bankruptcy Code (the "**Avoidance Actions**") and the proceeds thereof) and (B) the Carve-Out. "**Excluded Property**" shall mean: (a) any permit or license issued by a governmental authority to any of Debtors, the CCAA Debtors or their affiliates (a "**Pledgor**") or any agreement to which any Pledgor is a party, in each case, only to the extent and for so long as the terms of such permit, license or agreement or any requirement of law applicable thereto, validly prohibit the creation by such Pledgor of a security interest in such permit, license or agreement in favor of the Collateral Agent (after giving effect to Sections 9-406(d), 9-407(a), 9-408(a) or 9-409 of the UCC (or any successor provision or provisions) or any other applicable law (including the Bankruptcy Code) or principles of equity); (b) Equipment owned by any Pledgor on the date hereof or hereafter acquired that is subject to a lien securing a purchase money obligation or capital lease obligation permitted to be incurred pursuant to the provisions of the DIP Facility if the contract or other agreement in which such lien is granted (or the documentation providing for such purchase money obligation or capital lease obligation) validly prohibits the creation of any other lien on such equipment; and (c) any intent-to-use trademark application to the extent and for so long as creating by a Pledgor of a security interest therein would result in the loss by such Pledgor of any material rights therein; *provided, however,* that Excluded Property shall not include any

proceeds, substitutions or replacements of any Excluded Property referred to in clause (a), (b) or (c) (unless such proceeds, substitutions or replacements would constitute Excluded Property referred to in clause (a), (b) or (c));

(iv)    authorizing the Debtors to use Cash Collateral (as defined in section 363 of the Bankruptcy Code) in which any Prepetition First Lien Lender or Prepetition Second Lien Lender (each as defined below) has an interest pursuant to any Prepetition Credit Document (as defined below);

(v)    granting adequate protection to each lender (collectively, the "**First Lien Lenders**") and each other Secured Party (as defined in the First Lien Credit Agreement) (together with the First Lien Lenders, the "**First Lien Secured Parties**") under and in connection with that certain First Lien Credit Agreement, dated as of July 10, 2007 (the "**First Lien Credit Agreement**" and together with all other loan and security documents executed in connection therewith, the "**First Lien Credit Documents**"), by and among the Borrowers (as defined in the First Lien Credit Agreement) and certain of their subsidiaries and affiliates, the First Lien Lenders and UBS AG, as administrative agent (the "**First Lien Administrative Agent**") and collateral agent (in such capacity, the "**First Lien Collateral Agent**" and, together with the First Lien Administrative Agent, the "**First Lien Agent**"); and

(vi)    granting adequate protection to each lender (collectively, the "**Second Lien Lenders**", and, together with the First Lien Lenders, the "**Prepetition Lenders**") under and in connection with that certain Second Lien Credit Agreement, dated as of July 10, 2007 (as amended, the "**Second Lien Credit Agreement**" and together with all other loan and security documents executed in connection therewith, the "**Second Lien Credit Documents**" (such Second Lien Credit Documents, together with the First Lien Credit Documents, the "**Prepetition**

{00001264. }

|NY\1558908.6||

**Credit Documents**"), by and among Arclin US and certain of its subsidiaries and affiliates, the Second Lien Lenders and The Bank of New York Mellon, as successor administrative agent (in such capacity, the "**Second Lien Administrative Agent**") and collateral agent (in such capacity, the "**Second Lien Collateral Agent**" and, together with the Second Lien Administrative Agent, the "**Second Lien Agent**," and, together with the First Lien Agent, the "**Prepetition Agents**").

Pursuant to Bankruptcy Rules 4001(b) and 4001(c)(1), due and sufficient notice under the circumstances of (1) the Motion, (2) the hearing held on July 28, 2009 (the "**Interim Hearing**"), (3) the order entered by the Bankruptcy Court on July 28, 2009 granting the Motion on an interim basis (the "**Interim Order**") and (4) the final hearing held on August 21, 2009 (the "**Final Hearing**") was provided by the Debtors as set forth in paragraph I below; and the Court having held the Interim Hearing and the Final Hearing; and upon consideration of all pleadings filed with this Court; and all objections, if any, to the relief requested in the Motion having been withdrawn, resolved or overruled by the Court; and upon the record made by the Debtors at the Interim Hearing and Final Hearing and the Declaration of D. Scott Maynard in Support of the First Day Motions; and after due deliberation and consideration and good and sufficient cause appearing therefor;

IT IS HEREBY FOUND:

A.     On July 27, 2009 (the "**Petition Date**"), the Debtors each commenced in this Court a case under chapter 11 of the Bankruptcy Code and the Canadian Debtors applied for an initial order under the Companies' Creditors Arrangement Act ("**CCAA**") in the Ontario Superior Court of Justice (Commercial List) (the "**Canadian Court**") (the "**Canadian Proceeding**"). The Debtors are continuing to manage and operate their businesses and property as debtors and debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

B. These Cases are being jointly administered. No request for the appointment of a trustee or examiner has been made in these Cases. An official committee of unsecured creditors (the "**Committee**") was appointed in these cases by the U.S. Trustee on August 11, 2009.

C. This Court has jurisdiction over these proceedings, and over the property affected hereby, pursuant to 28 U.S.C. §§ 157(b) and 1334. This is a core proceeding as defined in and pursuant to 28 U.S.C. § 157(b)(2). Venue for the Cases and for proceedings on the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

D. Without any finding by the Bankruptcy Court, and without prejudice to the rights of parties in interest as set forth in paragraph 6 below, the Debtors admit, stipulate, acknowledge and agree that:

(i) Pursuant to the First Lien Credit Agreement, the First Lien Secured Parties made loans and advances to, issued letters of credit for and/or provided other financial accommodations to or for the benefit of the Debtors from time to time.

(ii) Pursuant to the First Lien Credit Documents, the Debtors were, as of the Petition Date, jointly and severally indebted to the First Lien Agent, the First Lien Lenders and the other First Lien Secured Parties on account of First Lien Indebtedness (as defined below) exclusive of accrued but unpaid interest, costs, fees and expenses, in the principal amount of approximately $204,132,994 (which consists of approximately $183,532,994 in principal amount of prepetition term loans, $17,000,000 in principal amount of prepetition revolving loans and a $3,558,000 interest hedge). For purposes of this Final Order, the term "**First Lien Indebtedness**" shall mean and include, without duplication, any and all amounts owing or outstanding under the First Lien Credit Documents (including, without limitation, all Secured Obligations as defined in the First Lien Credit Agreement) and all interest on, fees and other

costs, expenses and charges owing in respect of, such amounts (including, without limitation, any reasonable attorneys', accountants', financial advisors' and other fees and expenses that are chargeable or reimbursable under the applicable provisions of the First Lien Credit Documents) and any and all obligations and liabilities, contingent of otherwise, owed in respect of the letter of credit or other Secured Obligations (as defined in the First Lien Credit Agreement) outstanding thereunder.

(iii)    Pursuant to the First Lien Credit Documents, the Debtors granted to the First Lien Collateral Agent for the benefit of the First Lien Secured Parties first priority and continuing pledges, liens and security interests (the "**First Lien Security Interests**") to secure the First Lien Indebtedness and any guarantees thereof, in and upon substantially all of the Debtors' property and assets, whether real or personal, tangible or intangible and wherever located, whether now or hereafter existing or acquired, and all the proceeds, offspring, rents and profits thereof (the "**Prepetition Collateral**").

(iv)    As of the Petition Date and immediately prior to giving effect to the Interim Order, (a) the First Lien Credit Documents are valid and binding agreements and obligations of the Debtors and the First Lien Security Interests (i) constitute valid, binding, enforceable and perfected first priority security interests and Liens, subject only to the Liens (as defined in the First Lien Credit Documents) permitted under the First Lien Credit Agreement, but only to the extent such permitted senior Liens are valid, enforceable, non-avoidable Liens and security interests that are perfected prior to the Petition Date (or perfected after the Petition Date to the extent permitted by section 546(b) of the Bankruptcy Code), which are not subject to avoidance, reduction, disallowance, impairment, recharacterization or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law and which are senior in priority to the

First Lien Security Interests under applicable law and after giving effect to any applicable subordination or intercreditor agreements (such liens, the "**Permitted Prior Liens**"), and (ii) are not subject to avoidance, reduction, recharacterization, disallowance, impairment or subordination, pursuant to the Bankruptcy Code or applicable non-bankruptcy law; and (b) (i) the First Lien Indebtedness constitutes the legal, valid, and binding obligation of the Debtors, enforceable in accordance with its terms, (ii) no objection, offset, defense, or counterclaim of any kind or nature to any of the First Lien Indebtedness exists, and (iii) the First Lien Indebtedness, and any amounts paid at any time to any First Lien Secured Parties on account thereof with respect thereto, are not subject to avoidance, recharacterization, reduction, disallowance, impairment or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law.

(v)     Pursuant to the Second Lien Credit Agreement, the Second Lien Lenders made loans and/or provided other financial accommodations to or for the benefit of the Debtors from time to time.

(vi)     Pursuant to the Second Lien Credit Documents, the Debtors were, as of the Petition Date, jointly and severally indebted to the Second Lien Agent and the Second Lien Lenders on account of Second Lien Indebtedness (as defined below) exclusive of accrued but unpaid interest, costs, fees and expenses, in the principal amount of approximately $30,000,000. For purposes of this Final Order, the term "**Second Lien Indebtedness**" shall mean and include, without duplication, any and all amounts owing or outstanding under the Second Lien Credit Documents (including, without limitation, all Secured Obligations as defined in the Second Lien Credit Agreement) and all interest on, fees and other costs, expenses and charges owing in respect of, such amounts (including, without limitation, any reasonable attorneys', accountants', financial advisors' and other fees and expenses that are chargeable or reimbursable under the

applicable provisions of the Second Lien Credit Documents) and any and all obligations and liabilities, contingent or otherwise, owed in respect of the letter of credit or other Secured Obligations (as defined in the Second Lien Credit Agreement) outstanding thereunder (such Second Lien Indebtedness, together with the First Lien Indebtedness, the "**Prepetition Indebtedness**").

      (vii)    Pursuant to the Second Lien Credit Documents, the Debtors granted to the Second Lien Collateral Agent for the benefit of the Second Lien Agent and Second Lien Lenders second priority and continuing pledges, liens and security interests (the "**Second Lien Security Interests**") to secure the Second Lien Indebtedness and any guarantees thereof, in to the Prepetition Collateral.

      (viii)    As of the Petition Date and immediately prior to giving effect to the Interim Order, (a) the Second Lien Credit Documents are valid and binding agreements and obligations of the Debtors and the Second Lien Security Interests (i) constitute valid, binding, enforceable and perfected second priority security interests and Liens, subject only to the First Lien Security Interests and the Permitted Prior Liens, and (ii) are not subject to avoidance, reduction, recharacterization, disallowance, impairment or subordination, pursuant to the Bankruptcy Code or applicable non-bankruptcy law; and (b) (i) the Second Lien Indebtedness constitutes the legal, valid, and binding obligation of the Debtors, enforceable in accordance with its terms, (ii) no objection, offset, defense, or counterclaim of any kind or nature to any of the Second Lien Indebtedness exists, and (iii) the Second Lien Indebtedness, and any amounts paid at any time to any Second Lien Agent or any Second Lien Lender on account thereof with respect thereto, are not subject to avoidance, recharacterization, reduction, disallowance, impairment or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law.

E.     Pursuant to that certain agreement, dated as of July 10, 2007 (the "**Intercreditor Agreement**"), the Debtors, the First Lien Collateral Agent and the Second Lien Collateral Agent are parties to an intercreditor arrangement that governs the respective rights, obligations and priorities of the First Lien Lenders and the Second Lien Lenders with respect to their relative interests in the Prepetition Collateral and certain other matters, including, without limitation, the DIP Facility.  Pursuant to the Intercreditor Agreement, the First Lien Security Interests are senior in priority to the Second Lien Security Interests on all Prepetition Collateral.

F.     The Debtors do not have sufficient available sources of working capital and financing to carry on the operation of their businesses without the DIP Facility.  The Debtors' businesses require the DIP Facility to permit, among other things, the orderly continuation of the operation of their businesses, to maintain business relationships with vendors, suppliers and customers, to make payroll, to make capital expenditures and to satisfy other working capital and operational, financial and general corporate needs.  The access of the Debtors to sufficient working capital and liquidity through the incurrence of new indebtedness for borrowed money and other financial accommodations is vital to the preservation and maintenance of the going concern values of the Debtors and to the success of these Cases.  Without such credit, the Debtors would not be able to operate their businesses and the Debtors' estates would be irreparably harmed.

G.     Given their current financial condition, financing arrangements and capital structure, the Debtors are unable to obtain financing from sources other than the DIP Lenders on terms more favorable to the Debtors than under the DIP Facility and the documents and instruments delivered pursuant thereto or in connection therewith (inclusive of the DIP Facility Agreement, the "**DIP Facility Documents**").  The Debtors have been unable to obtain sufficient

unsecured credit solely under section 503(b)(1) of the Bankruptcy Code as an administrative expense. New credit is unavailable to the Debtors without (i) providing the DIP Facility Superpriority Claim and the DIP Facility Liens to the DIP Agent for the benefit of the DIP Lenders as provided herein and in the DIP Facility Documents and (ii) concurrently providing for the Adequate Protection to the Prepetition Secured Parties on the terms and conditions set forth herein.

H.    The DIP Agent and the DIP Lenders have indicated a willingness to consent and agree to provide financing to the Debtors subject to (i) the entry of this Final Order, (ii) approval of the terms and conditions of the DIP Facility and the DIP Facility Documents, (iii) the terms and conditions of all "First-Day Orders" (whether interim or final) being, in form and substance, reasonably satisfactory to the DIP Administrative Agent, and (iv) findings by the Court that such financing is essential to the Debtors' estates, that the terms of such financing were negotiated in good faith and at arm's length, and that the DIP Agent's and/or the DIP Lenders' DIP Facility Liens and DIP Facility Superpriority Claim, and other protections granted pursuant to this Final Order and the DIP Facility Documents will not be affected by any subsequent reversal, modification, vacatur or amendment of this Final Order or any other order, as provided in section 364(e) of the Bankruptcy Code. Each of the DIP Agent and DIP Lenders has acted in good faith in negotiating, consenting to and agreeing to provide the postpetition financing arrangements contemplated by this Final Order and the other DIP Facility Documents and the reliance of each of the DIP Agent and the DIP Lenders on the assurances referred to above is in good faith.

I.    Notice of the Motion and the Final Hearing has been provided by the Debtors to (each of the following, a "**Notice Party**," and collectively, the "**Notice Parties**"): (i) the Office of the United States Trustee for Region 3, serving the District of Delaware (the "**U.S. Trustee**");

(ii) the creditors (excluding insiders) holding the 30 largest unsecured claims on a consolidated basis against the Debtors; (iii) counsel to the Committee; (iv) all of the Debtors' secured creditors of record, other than the Prepetition Lenders; (v) the Internal Revenue Service; (vi) the United States Securities and Exchange Commission; (vii) the United States Attorney's Office; (viii) the United States Attorney General; (ix) counsel to the Prepetition Agents, for themselves and for the Prepetition Lenders; and (x) counsel to the DIP Agent for itself and for the DIP Lenders. Under the circumstances, the requisite notice of the Final Hearing and the relief requested in the Motion has been provided in accordance with Bankruptcy Rule 4001, which notice is sufficient for all purposes under the Bankruptcy Code, including, without limitation, sections 102(1) and 364 of the Bankruptcy Code, and no other notice need be provided for entry of this Final Order.

J.    The Debtors have requested immediate entry of this Final Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001 (c)(2). Absent entry of this Final Order, the Debtors' businesses, properties and estates will be harmed.

K.    The ability of the Debtors to finance their respective operations and the availability to the Debtors of sufficient working capital and other financial and general corporate liquidity through the incurrence of new indebtedness for borrowed money and other financial accommodations is in the best interests of the Debtors, and their respective creditors and estates. The financing authorized hereunder is vital to avoid immediate and irreparable harm to the Debtors' businesses, properties and estates and to allow the orderly continuation of the Debtors' businesses.

L.    Based upon the record presented by the Debtors to this Court: (i) the terms of the DIP Facility are the best available under the circumstances, reflect the Debtors' exercise of

prudent business judgment consistent with their fiduciary duty, and are supported by reasonably equivalent value and fair consideration; (ii) the DIP Facility has been negotiated in good faith and at arm's length among the Debtors and the DIP Agent, and any credit extended, loans made and other financial accommodations extended to the Debtors by the DIP Lenders shall be deemed to have been extended, issued or made, as the case may be, in "good faith" within the meaning of section 364(e) of the Bankruptcy Code.

M.     None of the Prepetition Secured Parties have opposed the terms and conditions of this Final Order, including the priming under section 364(d) of the Bankruptcy Code, as provided for herein. The consent of the First Lien Secured Parties granted herein is expressly limited to (i) the Debtors' use of Cash Collateral solely on the terms and conditions set forth in this Final Order and (ii) the postpetition financing being provided by the DIP Agent and the DIP Lenders as contemplated by this Final Order and the DIP Facility Agreement. Nothing in this Final Order, including, without limitation, any of the provisions herein with respect to adequate protection, shall constitute, or be deemed to constitute, a finding that the interests of the First Lien Secured Parties are or will be adequately protected with respect to any non-consensual use of Cash Collateral or priming of the First Lien Security Interests.

IT IS HEREBY ORDERED that:

1.     Disposition.  The Motion is granted as set forth in this Final Order.  Any objections that have not previously been withdrawn are hereby overruled.  This Final Order shall become effective immediately upon its entry.

2.     Authorization to Borrow.  Provided that the Debtors are not in default under the terms of this Final Order, the Debtors are immediately authorized to borrow under the DIP Facility from the DIP Lenders in an aggregate principal amount up to $25 million pursuant to the

terms and conditions of the DIP Facility Agreement and use such amounts and proceeds in accordance with the terms of (i) the DIP Facility Agreement and (ii) the supplemental budget, attached hereto as Exhibit A, prepared and delivered to the DIP Agent by the Debtors that reflects projected cash receipts, operating disbursements, payroll disbursements, non-operating disbursements and cash balances on a weekly basis from August 22, 2009 through November 27, 2009, which shall be in form and substance acceptable to the DIP Agent, the DIP Arrangers and the Required Lenders and may be updated from time to time pursuant to amendments thereto as approved by the DIP Agent, the DIP Arrangers and the Required Lenders (such budget, as amended, the "**Approved Budget**"). All of the obligations described in the DIP Facility Documents shall constitute legal, valid and binding obligations of the Debtors, enforceable against each such Debtor in accordance with their terms.

3.   DIP Facility Superpriority Claims.  For all of the Obligations (as defined in the DIP Facility Agreement) and Postpetition Indebtedness arising under the DIP Facility and the DIP Facility Documents, the DIP Agent, the DIP Arrangers and the DIP Lenders are hereby granted, pursuant to section 364(c)(1) of the Bankruptcy Code, and subject only to the Carve-Out, the DIP Facility Superpriority Claims, which claims shall be payable from and have recourse to, in addition to the Collateral, any unencumbered prepetition and postpetition property of the Debtors, whether now existing or hereafter acquired; *provided, however*, that the DIP Facility Superpriority Claims shall not be payable from or have recourse to the proceeds of the Avoidance Actions.  The DIP Facility Superpriority Claims shall be deemed legal, valid, binding, and enforceable claims, not subject to subordination, impairment or avoidance, for all purposes in these Cases and any successor case.

4.    _DIP Facility Liens_.    As security for the repayment of the Postpetition Indebtedness, pursuant to sections 364(c)(2), (c)(3) and (d) of the Bankruptcy Code, the DIP Collateral Agent, on behalf of itself and the Secured Parties, is hereby granted (without the necessity of the execution by the Debtors or the filing or recordation of mortgages, security agreements, lock box agreements, financing statements or otherwise) the DIP Facility Liens. The DIP Facility Liens granted herein shall prime and be senior in all respects to the Liens on the Prepetition Collateral issued pursuant to the Prepetition Credit Documents (the "**Prepetition Liens**") and the Replacements Liens (as defined below) pursuant to section 364(d) of the Bankruptcy Code and all possessory Prepetition Collateral held by the Prepetition Agents shall be deemed to have been transferred to the DIP Agent and at the request of the DIP Administrative Agent, the Prepetition Agents shall transfer and assign their interests in any blocked account or tri-party bank account agreements in respect of the Prepetition Collateral to the DIP Agent for purposes of perfection and control; _provided, however,_ that the transfer of such possessory Prepetition Collateral shall be subject to re-transfer or disgorgement based upon the Committee's Investigation Rights as set forth in paragraph 6 of this Order. In the event of the occurrence of an Event of Default or similar event under the DIP Facility Documents (an "**Event of Default**"), the DIP Facility Liens, the Prepetition Liens and the Replacement Liens shall be subject to payment of the Carve-Out. Pursuant to section 364(c)(3) of the Bankruptcy Code, the DIP Facility Liens shall be junior to the Permitted Prior Liens; _provided, however,_ that the DIP Facility Liens shall be senior in all respects to and prime the Prepetition Secured Parties' liens, claims and interests under the Prepetition Credit Documents (including the Prepetition Liens and Replacements Liens, each as granted herein). The DIP Facility Liens shall not include

any lien on any property that is Excluded Property (as defined above), *provided* that such exclusion shall apply only for so long as any such property remains Excluded Property.

5.     Carve-Out. Subject to the terms and conditions contained in this paragraph, the DIP Facility Liens, the DIP Facility Superpriority Claim, the Adequate Protection and liens and claims held by the Prepetition Secured Parties with respect to the Debtors, shall be subject to (i) fees payable to the Clerk of the Bankruptcy Court and the U.S. Trustee pursuant to 28 U.S.C. § 1930(a), (ii) allowed, accrued but unpaid professional fees and expenses of the Debtors and the Committee, to the extent consistent with the Approved Budget on a cumulative basis (and not merely on a cumulative line item basis) for (A) all professionals representing the Debtors, on the one hand, and (B) all professionals representing the Committee, on the other hand, which have accrued and been incurred prior to the occurrence of an Event of Default, *provided*, *however*, that no professional (the "**Requesting Professional**") may seek any payment for allowed, accrued but unpaid fees and expenses under the line item for another professional (the "**Line Item Professional**") within the same individual category of professionals (i.e., professionals representing the Committee and professionals representing the Debtors) unless otherwise agreed by the Line Item Professional and the Requesting Professional; and (iii) allowed, accrued but unpaid professional fees and expenses incurred by the Debtors and/or the Committee incurred in the Cases after an Event of Default (that is not waived or cured) in an aggregate amount not to exceed $750,000 (collectively, the "**Carve-Out**"). For purposes of calculating the aggregate amount of the Carve-Out upon an Event of Default, all Prepetition retainers and/or Chapter 11 Retainers (as defined in the orders retaining the Debtors' professionals) shall be applied to reduce (i) any and all allowed, accrued and unpaid professional fees and expenses which have been incurred by the Debtors' professionals after an Event of Default and (ii) to the extent

outstanding, any allowed, accrued and unpaid professional fees and expenses incurred prior to the occurrence of an Event of Default that are in excess of the Approved Budget. Notwithstanding the foregoing, so long as a Carve-Out Event has not occurred: (i) the Debtors shall be permitted to pay administrative expenses allowed and payable under sections 330 and 331 of the Bankruptcy Code, as the same may become due and payable, and (ii) such payments shall not be applied to reduce the Carve-Out. The Carve-Out shall exist at all times, but only be triggered and payable upon (i) the occurrence of an Event of Default under the DIP Facility Documents and the DIP Agent's delivery of notice of same (such notice, a "**Carve-Out Notice**") to the Debtors, counsel for the Debtors, and counsel to the Committee or (ii) the Final Maturity Date. In all cases, the Carve-Out, Cash Collateral and any loans made under the DIP Facility shall not include, apply to, or be available for any fees or expenses incurred by any party, including the U.S. Debtors or the Committee, in connection with (i) the initiation or prosecution of any claims, causes of action, adversary proceedings, or other litigation against any of the DIP Agent or the DIP Lenders, including, without limitation, challenging the amount, validity, extent, perfection, priority, or enforceability of, or asserting any defense, counterclaim, or offset to the Postpetition Indebtedness, the DIP Facility Superpriority Claim, or the security interests and liens of the DIP Agent in respect thereof, (ii) asserting any claims or causes of action, including, without limitation, claims or actions to hinder or delay the DIP Agent's or DIP Lenders' assertion, enforcement or realization on the Collateral in accordance with the DIP Facility Documents or this Final Order or any Avoidance Actions against the DIP Agent or the DIP Lenders, or (iii) the initiation or prosecution of any claims, causes of action, adversary proceedings, or other litigation against any of the Prepetition Secured Parties, including, without limitation, challenging the amount, validity, extent, perfection, priority, or enforceability of, or

asserting any defense, counterclaim, or offset to the Prepetition Indebtedness, or the Adequate Protection granted herein; *provided, however,* up to the amount of $100,000 shall be permitted to be used by professionals to the Committee to investigate whether the liens of the Prepetition Secured Parties were properly perfected as of the Petition Date and whether the claims of the Prepetition Secured Parties should not be allowed claims. The foregoing shall not be construed as consent to the allowance of any fees and expenses referred to above and shall not affect the right of the Debtors, the DIP Agent, the DIP Lenders, the Committee, the U.S. Trustee, or other parties in interest to object to the allowance and payment of such amounts.

6. <u>Investigation Rights</u>. Notwithstanding anything herein to the contrary, including the Debtors' stipulations and releases herein solely as they relate to the Prepetition Agents, the Prepetition Lenders and the Prepetition Credit Documents, the Committee and all non-debtor parties in interest (including any trustee appointed or elected in the cases prior to the Investigation Termination Date (as defined below)) and any subsequently appointed trustee in the Cases shall have until seventy-five days from the date of formation of the Committee (or such later date as may be (a) agreed to with the written consent of the DIP Arrangers or (b) so ordered by this Court, each as more specifically set forth below) (the "**Investigation Termination Date**")[3] to investigate the validity, perfection, and enforceability of the Prepetition Liens and the amount and allowability of the Prepetition Indebtedness, or to assert any other claims or causes of action against any of the Prepetition Secured Parties. The Investigation Termination Date may be extended: (a) with the consent of the DIP Arrangers, as memorialized in writing by the Committee and the DIP Arrangers, or (b) pursuant to an order of this Court finding cause for such extension. Upon the occurrence of (a) or (b) above, the extended date

---

[3] Until the occurrence of the Investigation Termination Date, the Debtors' stipulations and releases herein shall not be binding upon the Committee or any other non-Debtor party in interest.

shall be the Investigation Termination Date. If the Committee, which is hereby authorized to file any action or prosecute an objection or claim, or any non-Debtor party in interest hereafter vested with authority by the Court, determines that there may be a challenge by the Investigation Termination Date, upon three days' written notice to the Debtors and the Prepetition Agents, (which notice may be given on the Investigation Termination Date), the Committee, or other non-Debtor party in interest hereafter vested with authority by the Court (including any chapter 7 trustee that may be appointed or elected prior to the Investigation Termination Date), shall be permitted to file and prosecute an objection or claim related thereto (each, a "**Challenge**"), and shall have only until the Investigation Termination Date to file such objection or otherwise initiate an appropriate action or adversary proceeding (including a motion seeking authority to file an action) on behalf of the Debtors' estates setting forth the basis of any such Challenge. If a Challenge is not filed on or before the Investigation Termination Date, the agreements, acknowledgements and stipulations contained in paragraph D of this Final Order shall be irrevocably binding on the estates, Committee and all parties in interest (including, without limitation, a receiver, administrator, or trustee appointed in any of the Cases or in any jurisdiction) without further action by any party or this Court and the Committee and any other non-Debtor party in interest (including, without limitation, a receiver, administrator, or trustee appointed in any of the Cases or in any jurisdiction) shall thereafter he forever barred from bringing any Challenge.

7.    Limitation on Additional Surcharges. With the exception of the Carve-Out, and except as otherwise expressly permitted by the DIP Facility, neither the Collateral of the Debtors nor any DIP Agent, DIP Lenders or any Prepetition Secured Parties shall be subject to surcharge, pursuant to section 506(c) of the Bankruptcy Code or otherwise, by the Debtors or any other

party in interest without the prior written consent of the DIP Administrative Agent and Prepetition Agents and no such consent shall be implied from any other action, inaction or acquiescence by the DIP Administrative Agent, the DIP Lenders or the Prepetition Secured Parties in this proceeding, including but not limited to funding of the Debtors' ongoing operation by the DIP Agent and the DIP Lenders. The DIP Agent, DIP Lenders and Prepetition Secured Parties shall not be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the Collateral. The Prepetition Agents and the Prepetition Lenders shall each be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the Prepetition Agents and the Prepetition Lenders with respect to proceeds, product, offspring or profits of any of the Prepetition Collateral.

8.     <u>Authorization to Use Cash Collateral</u>. To the extent the Debtors had cash on hand as of the Petition Date and to the extent that the Prepetition Lenders had a valid, binding, enforceable, unavoidable and perfected lien on such cash on hand (the "**Petition Date Cash**"), the First Lien Agent, on behalf of the First Lien Lenders, and the Second Lien Agent, on behalf of the Second Lien Lenders, under the Intercreditor Agreement, have consented or are deemed to consent to the Debtors' use of Cash Collateral up to the amount of the Petition Date Cash, for the operation of their businesses in accordance with the Approved Budget. Upon the Debtors' use of the amount of the Petition Date Cash, provided that the conditions precedent under the DIP Facility Agreement are met, the Debtors shall use Loans (as defined in the DIP Facility Documents) under the DIP Facility, proceeds of Collateral and any Prepetition Secured Parties' Cash Collateral to fund the Debtors' operation of their businesses in accordance with the terms of the DIP Facility and in compliance with the Approved Budget. Nothing in this Final Order

shall authorize the disposition of any assets of the Debtors or their estates outside the ordinary course of business or any Debtor's use of any Cash Collateral or other proceeds resulting therefrom, except as permitted in this Final Order, or the DIP Facility Documents.

9. **Prepetition First Lien Secured Parties' Adequate Protection.** In consideration for the use of Cash Collateral and the priming of the First Lien Secured Parties' liens, claims and interests in the Prepetition Collateral (solely upon the terms and conditions of this Final Order), the First Lien Secured Parties shall receive the following as adequate protection (the "**First Lien Adequate Protection**"):

(a)    To the extent there is a diminution in the value of the interest of the First Lien Secured Parties in the Prepetition Collateral, whether the reason for such diminution is as a result of or from, arises from, or is attributable to, the imposition of the automatic stay, the priming of the First Lien Security Interests, the use of Cash Collateral or the physical deterioration, consumption, use, sale, lease, disposition, shrinkage or decline in market value of the Prepetition Collateral, the First Lien Collateral Agent, for the benefit of the First Lien Secured Parties, is granted replacement liens on the Prepetition Collateral to the extent to which the Prepetition Lenders had valid, binding, enforceable, unavoidable and perfected liens on the Prepetition Collateral (the "**First Lien Replacement Liens**"), which liens are valid, binding enforceable and fully perfected as of the date hereof and shall be subordinate only to the DIP Facility Liens, the Permitted Prior Liens and the Carve-Out; *provided, however,* that such First Lien Replacement Liens shall not attach to or be binding, enforceable or perfected upon the Avoidance Actions or the proceeds of Avoidance Actions;

(b)    An allowed administrative claim (the "**First Lien Administrative Claim**") against the Debtors' estates under section 507(b) of the Bankruptcy Code to the extent

that the First Lien Replacement Liens do not adequately protect against the diminution in the value of the Prepetition Collateral, which First Lien Administrative Claim, if any, shall be junior and subordinate only to the DIP Facility Superpriority Claim and the Carve-Out; *provided, however,* that such First Lien Administrative Claim shall not be payable from or have recourse to the Avoidance Actions or the proceeds of Avoidance Actions; and

(c)     To the extent provided in the First Lien Credit Agreement, payment of the First Lien Agent's reasonable fees and expenses for legal counsel, financial advisors, auditors, appraisers and other professionals for services rendered prepetition or postpetition on behalf of the First Lien Agent or its counsel; *provided*, that none of such fees and expenses as adequate protection payments hereunder shall be subject to approval by the Court or the United States Trustee Guidelines, but such professional shall provide copies of invoices and statements (redacted to remove confidential or attorney-client privileged information) to the U.S. Trustee and counsel to the Committee, and no recipient of any such payment shall be required to file with respect thereto any interim or final fee application with the Court; *provided, however*, the United States Trustee and Committee shall have ten days from receipt of the invoice to object to such fees (absent written agreement by the First Lien Agent to extend such ten-day period); *provided, further*, that the Court shall have jurisdiction to determine any dispute concerning such invoices, and *provided, further, however*, that such payments shall be provisional in nature, and if and to the extent that any payment(s) is challenged by a party in interest either (i) under section 506(b) of the Bankruptcy Code, (ii) on the basis that First Lien Secured Parties are not entitled to adequate protection, (iii) on the basis that there was less diminution in value than the level of adequate protection provided to the First Lien Secured Parties, or (iv) as a result of a successful Challenge and ultimately not allowed as a result of (i), (ii), (iii), and/or (iv), such payment(s)

may be recharacterized as a payment of principal on the indebtedness under the First Lien Credit Facility or shall be disgorged upon being "so ordered" pursuant to a final order from this Court.

10. <u>Second Lien Agent's and Second Lien Lenders' Adequate Protection.</u> In consideration for the use of Cash Collateral and the priming of the Second Lien Agent's and Second Lien Lenders' liens, claims and interests in the Prepetition Collateral (solely upon the terms and conditions of this Final Order), the Second Lien Agent and Second Lien Lenders shall receive the following as adequate protection (the "**Second Lien Adequate Protection**" and, together with the First Lien Adequate Protection, the "**Adequate Protection**"):

(a) To the extent there is a diminution in the value of the interest of the Second Lien Agent and the Second Lien Lenders in the Prepetition Collateral, whether the reason for such diminution is as a result of or from, arises from, or is attributable to, the imposition of the automatic stay, the priming of the Second Lien Security Interests, the use of Cash Collateral or the physical deterioration, consumption, use, sale, lease, disposition, shrinkage or decline in market value of the Prepetition Collateral, the Second Lien Agent, for the benefit of the Second Lien Lenders, is granted replacement liens on the Prepetition Collateral of the Debtors to the extent to which the Prepetition Lenders had valid, binding, enforceable, unavoidable and perfected liens on the Prepetition Collateral (the "**Second Lien Replacement Liens**," and together with the First Lien Replacement Liens, the "**Replacement Liens**"), which liens are valid, binding enforceable and fully perfected as of the date hereof and shall be subordinate only to the DIP Facility Liens, the Permitted Prior Liens, the First Lien Security Interests, the First Lien Replacement Liens and the Carve-Out; *provided, however,* that such Second Lien Replacement Liens shall not attach to or be binding, enforceable or perfected upon the Avoidance Actions or the proceeds of Avoidance Actions; and

(b)     An allowed administrative claim (the "**Second Lien Administrative Claim**") against the Debtors' estates under section 507(b) of the Bankruptcy Code to the extent that the Second Lien Replacement Liens do not adequately protect against the diminution in the value of the Prepetition Collateral, which Second Lien Administrative Claim, if any, shall be junior and subordinate only to the DIP Facility Superpriority Claim, the First Lien Administrative Claim and the Carve-Out; *provided, however,* that such Second Lien Administrative Claim shall not be payable from or have recourse to the Avoidance Actions or the proceeds of Avoidance Actions.

11.     Fees and Expenses of the DIP Facility Agent, the DIP Arrangers and the DIP Lenders. The Debtors shall promptly, following receipt of a written invoice (redacted to remove confidential, attorney-client privileged information or attorney-work product information) (with a copy delivered to the U.S. Trustee and counsel to the Committee), reimburse the DIP Agent and the DIP Arrangers for their reasonable out-of-pocket costs, fees (including attorneys' fees and expenses), charges, and expenses incurred in connection with the Cases, whether incurred prepetition or postpetition. No such out-of-pocket costs, fees, charges, and expenses shall be subject to Court approval or be required to be maintained in accordance with the U.S. Trustee guidelines and no recipient of any such payment shall be required to file with respect thereto any interim or final fee application with the Court; *provided, however*, the United States Trustee and the Committee shall have ten days from receipt of the invoice to object to such fees (absent written agreement by the DIP Arrangers to extend such 10-day period); *provided, further*, that the Court shall have jurisdiction to determine any dispute concerning such invoices; *provided, further,* that the DIP Agent or DIP Arrangers or their professionals (as applicable) shall disgorge

any amounts previously paid pursuant to those invoices upon being "so ordered" pursuant to a final order of this Court.

12.    <u>Restrictions on the Debtors</u>. Other than the Carve-Out and the Permitted Prior Liens, no claim having a priority superior or *pari passu* with those granted by this Final Order to the DIP Agent, the DIP Arrangers and the DIP Lenders shall be granted by any Debtor, while any portion of the DIP Facility or the commitment thereunder remains outstanding without the written consent of the DIP Administrative Agent and the DIP Arrangers. Except as expressly permitted by the DIP Facility Agreement and this Final Order, the Debtors will not, at any time during the Cases, grant mortgages, security interests, or liens in the Collateral of the Debtors or any portion thereof to any other parties pursuant to section 364(d) of the Bankruptcy Code or otherwise.

13.    <u>Additional Perfection Measures</u>. The DIP Agent and DIP Lenders shall not be required to file financing statements, mortgages, deeds of trust, security deeds, notices of lien, or similar instruments in any jurisdiction or effect any other action to attach or perfect the security interests and liens granted under the DIP Facility Documents and this Final Order (including, without limitation, the taking possession of any of the Collateral of the Debtors, the execution of any control, lock-box, deposit account, or the taking of any action to have security interests or liens noted on certificates of title or similar documents). Notwithstanding the foregoing, the DIP Agent and DIP Lenders may, in their sole discretion, file such financing statements, mortgages, deeds of trust, notices of lien, or similar instruments or otherwise confirm perfection of such liens, security interests, and mortgages without seeking modification of the automatic stay under section 362 of the Bankruptcy Code and all such documents shall be deemed to have been filed or recorded at the time of and on the Petition Date. Any entity holding property of the Debtors'

estates shall cooperate promptly with the DIP Agent in the execution of documents or other acts as the DIP Agent may request in its sole discretion to confirm perfection of the liens granted to the DIP Agent and the DIP Lenders hereunder.

14. _Access to Collateral—No Landlord's Liens._ Notwithstanding anything contained herein to the contrary and without limiting any other rights or remedies of the DIP Agent, for the ratable benefit of the DIP Lenders, contained in this Final Order or the DIP Facility Documents, or otherwise available at law or in equity, and subject to the terms of the DIP Facility Agreement and applicable law, upon written notice to the landlord of any leased premises that an Event of Default has occurred and is continuing under the DIP Facility Documents, the DIP Agent may, subject to any separate agreement by and between such landlord and the DIP Agent, enter upon any leased premises of the Debtors for the purpose of exercising any remedy with respect to Collateral located thereon and shall be entitled to all of the Debtors' rights and privileges as lessee under such lease without interference from the landlords thereunder, provided that the DIP Agent shall only pay rent of the Debtors that first accrues after the DIP Agent's written notice referenced above and that is payable during the period of such occupancy by the DIP Agent, calculated on a per diem basis. Nothing herein shall require the DIP Agent to assume any lease as a condition to the rights afforded to the DIP Agent in this paragraph. Furthermore, other than the Permitted Prior Liens, any landlord's lien, bailee's rights, right of distraint or levy, security interest or other interest that any landlord, warehousemen, bailee or landlord's mortgagee may have in any Collateral of the Debtors located on such leased premises, to the extent the same is not void under Section 545 of the Bankruptcy Code, is hereby expressly subordinated to the DIP Facility Liens in such Collateral.

15.     Automatic Stay. Subject only to the provisions of the DIP Facility Agreement and without further order from this Court, the automatic stay provisions of section 362 of the Bankruptcy Code are vacated and modified to the extent necessary to permit the DIP Agent and DIP Lenders to exercise, upon the occurrence and during the continuance of any Event of Default (as defined and provided for in Article 8 of the DIP Facility Agreement), all rights and remedies provided for in the DIP Facility Documents (including, without limitation, (a) the right to freeze monies or balances in the Debtors' accounts or (b) set off monies or balances of the Debtors in accounts maintained by the DIP Agent or any DIP Lender); *provided, however,* that prior to the exercise of any enforcement or liquidation remedies against the Collateral of the Debtors including, without limitation, clauses (a) and (b) above, the DIP Agent shall be required to give five business days written notice provided to the Debtors, their bankruptcy counsel, the Committee's counsel, and the U.S. Trustee. Notwithstanding the occurrence of an Event of Default or termination of the Commitments under the DIP Facility Agreement or anything herein, all of the rights, remedies, benefits, and protections provided to the DIP Agent and DIP Lenders under the DIP Facility Documents and this Final Order shall survive the Final Maturity Date. Prior to the expiration of the five business days written notice period provided above, the Debtors and/or the Committee may move on an expedited basis for the entry of an order to re-impose or continue the automatic stay following an Event of Default (and it being a term of this Final Order that no other party shall have standing to do so), and the Debtors and/or the Committee shall be allowed to assert in support of such relief any and all such issues as the Debtors and/or the Committee shall deem appropriate (the "**Stay Motion**"). Moreover, after notice of an occurrence of and during the continuance of any Event of Default (as defined and provided for in Article 8 of the DIP Facility Agreement), the Committee, on behalf of the

Debtors, shall have the right to make an expedited motion with the Court that seeks the estates' right to continue to utilize Cash Collateral until the Stay Motion is adjudicated by a final order of the Court. This Court shall retain exclusive jurisdiction to hear and resolve any disputes and enter any orders required by the provisions of this paragraph and relating to the application, re-imposition or continuance of the automatic stay as provided hereunder.

16. <u>Binding Effect</u>. The provisions of this Final Order shall be binding upon and inure to the benefit of the DIP Agent, the DIP Lenders, the Prepetition Secured Parties, the Debtors, and their respective successors and assigns. Except as provided for in paragraph 6, to the extent permitted by applicable law, this Final Order shall bind any trustee hereafter appointed for the estate of any of the Debtors, whether in these Cases or in the event of the conversion of any of the Cases to a liquidation under chapter 7 of the Bankruptcy Code. Such binding effect is a benefit of the DIP Agent's and the DIP Lenders' bargain in connection with the DIP Facility and is an integral part of this Final Order.

17. <u>Survival</u>. The provisions of this Final Order and any actions taken pursuant hereto shall survive the entry of any order: (i) confirming any plan of reorganization in any of the Cases (and, to the extent not satisfied in full in cash, the Postpetition Indebtedness shall not be discharged by the entry of any such order, or pursuant to section 1141(d)(4) of the Bankruptcy Code, each of the Debtors having hereby waived such discharge); (ii) converting any of the Cases to a chapter 7 case; or (iii) dismissing any of the Cases, and the terms and provisions of this Final Order, as well as the DIP Facility Superpriority Claims, the DIP Facility Liens, and the Adequate Protection granted pursuant to this Final Order. The DIP Facility Documents shall continue in full force and effect notwithstanding the entry of any such order, and such claims and liens shall maintain their priority as provided by this Final Order and the DIP Facility Documents

and to the maximum extent permitted by law until all of the Postpetition Indebtedness and Prepetition Indebtedness is indefeasibly paid in full in cash and discharged. Further, the provision relating to the Carve-Out shall survive the Final Maturity Date as provided for herein.

18. <u>After Acquired Property</u>. Except as otherwise provided in this Final Order, pursuant to section 552(a) of the Bankruptcy Code, all property acquired by the Debtors after the Petition Date, including, without limitation, all Collateral of the Debtors pledged or otherwise granted to the DIP Agent, on behalf of themselves and the DIP Lenders, pursuant to the DIP Facility Documents and this Final Order, is not and shall not be subject to any lien of any person or entity resulting from any security agreement entered into by the Debtors prior to the Petition Date, except to the extent that such property constitutes proceeds of property of the Debtors that is subject to a valid, enforceable, perfected, and unavoidable lien as of the Petition Date which is not subject to subordination under section 510(c) of the Bankruptcy Code or other provision or principles of applicable law.

19. <u>Access to the Debtors</u>. In accordance with the provisions of access in the DIP Facility Documents, the Debtors shall permit representatives, agents, and/or employees of the DIP Agent and DIP Lenders to have reasonable access to their premises and records during normal business hours (without unreasonable interference with the proper operation of the Debtors' businesses) and shall cooperate, consult with, and provide to such representatives, agents, and/or employees all such non-privileged information as they may reasonably request.

20. <u>Committee Access to Financial Information</u>. Any financial information or reports that the Debtors are required to provide to the DIP Lenders and/or the DIP Agent under this Final Order or the DIP Facility Agreement (including, but not limited to, the Approved Budget and any supplements and/or amendments to the Approved Budget) shall also be substantially

contemporaneously transmitted by the Debtors to counsel for the Committee or the Committee's financial advisors, provided that the Committee and its counsel and financial advisors shall keep such information confidential in accordance with the terms of the Committee's by-laws or any confidentiality agreement or protective order applicable to the Committee and/or its counsel and financial advisors agreed to by and among the Debtors, the DIP Lenders, the DIP Agent and the Committee subsequent to the date of this Final Order.

21.     Authorization to Act. Each of the Debtors is authorized to do and perform all acts, to make, execute and deliver all instruments and documents (including, without limitation, the execution of security agreements, mortgages and financing statements), and to pay fees as provided under this Final Order, which may be reasonably required or necessary for the Debtors' performance under the DIP Facility and this Final Order, including, without limitation:

(a)     the execution of the DIP Facility Documents;

(b)     the modification or amendment of the DIP Facility Agreement or any other DIP Facility Documents without further order of this Court, in each case, in such form as the Debtors, the DIP Agent, and the DIP Lenders may agree (except for any modification or amendment to shorten the maturity of the extensions of credit thereunder, or increase the rate of interest or the letter or credit fees payable thereunder); *provided, however,* that notice of any modification or amendment shall be provided to the Committee and the U.S. Trustee, each of which will have five days from the date of such notice within which to object in writing; *provided further, however,* that if such objection is timely provided or if any modification or amendment is material, then such modification or amendment shall be permitted only pursuant to an order of the Court; and

(c)     the non-refundable payments to the DIP Agent or the DIP Arrangers, as the case may be, of the fees referred to in the DIP Facility Agreement and/or separately agreed to in writing with the DIP Arrangers, and reasonable costs and expenses as may be due from time to time, including, without limitation, reasonable attorneys' and other professional fees and disbursements as provided in the DIP Facility Documents; *provided, however*, that the DIP Agent and the DIP Arrangers shall not seek or be paid any fee for their consent to an initial extension of the Final Maturity Date (as defined in the DIP Facility Agreement) as set forth in section 2.19 of the DIP Facility Agreement.

22.     Amendment to DIP Facility Agreement. Subsection (i) of Section 8.01(p) of the DIP Facility Agreement shall be amended solely as set forth on Exhibit 1 to this Final Order.

23.     Insurance Policies.   The DIP Agent and DIP Lenders shall be, and shall be deemed to be, without any further action or notice, named as additional insureds and loss payees on each insurance policy maintained by the Debtors which in any way relates to the Collateral of the Debtors.  Any insurance proceeds or other receipts from any source (excluding other authorized payments provided for herein) paid to any of the Prepetition Secured Parties shall be immediately delivered to the Debtors and subject to the DIP Facility Liens and provisions of the DIP Facility Agreement.

24.     Subsequent Reversal. If any or all of the provisions of this Final Order or the DIP Facility Documents are hereafter modified, vacated, amended, or stayed by subsequent order of this Court or any other court without the consent of the DIP Administrative Agent, the DIP Arrangers and the Required Lenders:  (i) such modification, vacatur, amendment, or stay shall not affect the validity of any obligation of any of the Debtors to the DIP Agent, the DIP Arrangers, the DIP Lenders or Prepetition Secured Parties that is or was incurred prior to the

effective date of such modification, vacatur, amendment, or stay (the "**Effective Date**"), or the validity, enforceability or priority of the DIP Facility Superpriority Claim, DIP Facility Liens, Adequate Protection or other grant authorized or created by this Final Order and the DIP Facility Documents; (ii) the Postpetition Indebtedness and Adequate Protection pursuant to this Final Order and the DIP Facility Documents arising prior to the Effective Date shall be governed in all respects by the original provisions of this Final Order and the DIP Facility Documents, and the validity of any such credit extended or security interest granted pursuant to this Final Order and the DIP Facility Documents is and shall be protected by section 364(e) of the Bankruptcy Code; (iii) Adequate Protection furnished to the Prepetition Secured Parties pursuant to this Final Order shall be governed in all respects by the original provisions of this Final Order, the Intercreditor Agreement and the Prepetition Credit Documents.

25.    Effect of Dismissal of Cases.    If the Cases are dismissed, converted or substantively consolidated, then neither the entry of this Final Order nor the dismissal, conversion or substantive consolidation of these Cases shall affect the rights of the DIP Agent, the DIP Arrangers, the DIP Lenders and the Prepetition Secured Parties (to the extent of Adequate Protection provided hereunder) under their respective documents or this Final Order, and all of the respective rights and remedies thereunder of the DIP Agent, the DIP Arrangers, the DIP Lenders and the Prepetition Secured Parties (to the extent of Adequate Protection provided hereunder) shall remain in full force and effect as if the Cases had not been dismissed, converted, or substantively consolidated. If an order dismissing any of the Cases is at any time entered, such order shall provide (in accordance with Sections 105 and 349 of the Bankruptcy Code) that (i) the DIP Facility Liens and DIP Facility Superpriority Claim granted to and conferred upon the DIP Agent, the DIP Arrangers and DIP Lenders and the protections afforded to the DIP Agent,

the DIP Arrangers and/or the DIP Lenders, as applicable, pursuant to this Final Order and the DIP Facility Documents shall continue in full force and effect and shall maintain their perfection and priorities as provided in this Final Order until all Postpetition Indebtedness shall have been paid and satisfied in full in cash (and that such DIP Facility Liens, DIP Facility Superpriority Claim and other protections shall, notwithstanding such dismissal, remain binding on all interested parties), (ii) the Adequate Protection granted to and conferred upon the Prepetition Secured Parties shall continue in full force and effect and shall maintain their priorities as provided in this Final Order and the Intercreditor Agreement until such Adequate Protection has been satisfied, (iii) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purpose of enforcing the DIP Facility Liens, Prepetition Liens, DIP Facility Superpriority Claim, and Adequate Protection referred to herein, and (iv) any hearing on a motion to dismiss any of the Cases shall require at least twenty days prior notice to allow the DIP Agent and DIP Lenders to perfect their security interest and liens in the Collateral of the Debtors under non-bankruptcy law; *provided, however*, that nothing herein shall prevent any party who seeks dismissal or conversion of this case from also seeking expedited consideration of that motion to dismiss. The provisions of this Final Order, and any actions taken pursuant hereto, shall survive the entry of and shall govern with respect to any conflict with any order that may be entered confirming any plan of reorganization or converting any of the Cases from Chapter 11 to Chapter 7. In no event shall any plan of reorganization be allowed to alter the terms of repayment of any of the Postpetition Indebtedness from those set forth in the DIP Facility Documents. The Postpetition Indebtedness shall not be extinguished or released by the entry of any order confirming a plan of reorganization in any of the Cases unless the Postpetition Indebtedness is paid in full in cash upon the effective date of any such plan. Pursuant to section 1141(d)(4) of the Bankruptcy Code,

the Debtors have waived discharge for the benefit of the DIP Agent, the DIP Arrangers and the DIP Lenders.

26. <u>Proofs of Claim</u>. None of the DIP Lenders, the DIP Agent, the Prepetition Lenders or the Prepetition Agents will be required to file proofs of claim in any of the Cases. The Prepetition Agents are hereby authorized and entitled, in their sole discretion, but not required, to file (and amend and/or supplement, as they see fit) aggregate proofs of claim in each of the Cases on behalf of (a) all of the First Lien Secured Parties and (b) all of the Second Lien Lenders, each in respect of the Prepetition Indebtedness. Any proof of claim so filed shall be deemed to be in addition and not in lieu of any other proof of claim that may be filed by any of the Prepetition Secured Parties. Any order entered by the Bankruptcy Court in relation to the establishment of a bar date in any of the Cases will so provide.

27. <u>Findings of Fact and Conclusions of Law</u>. This Final Order constitutes findings of fact and conclusions of law and shall take effect and be fully enforceable immediately upon the entry thereof.

28. <u>Controlling Effect of Order</u>. To the extent any provision of this Final Order conflicts with any provision of the Motion, the Interim Order, any prepetition agreement or any document executed in connection with the DIP Facility, the provisions of this Final Order shall control.

Dated: August 21, 2009
       Wilmington, Delaware

_____
United States Bankruptcy Judge