# EXHIBIT I

## JOINT PLAN OF REORGANIZATION
## UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Arclin US Holdings Inc., | ) | Bankr. Case No. 09 - 12628 (KJC) |
| Arclin U.S.A. Inc., | ) | Bankr. Case No. 09 - 12629 (KJC) |
| Arclin Surfaces Inc. | ) | Bankr. Case No. 09 - 12630 (KJC) |
| Arclin Chemicals Holding Inc., | ) | Bankr. Case No. 09 - 12631 (KJC) |
| Arclin Industries U.S.A. Inc., | ) | Bankr. Case No. 09 - 12632 (KJC) |
| Arclin Fort Smith Inc., | ) | Bankr. Case No. 09 - 12633 (KJC) |
| and Marmorandum LLC, | ) | Bankr. Case No. 09 - 12634 (KJC) |
| | ) | |
| Debtors. | ) | |
| | ) | |

## JOINT PLAN OF REORGANIZATION
## UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

Frederick B. Rosner (DE 3995)
MESSANA ROSNER & STERN LLP
1000 N. West Street, Suite 1200
Wilmington, Delaware 19801
Telephone: (302) 777-1111
Email: frosner@mrs-law.com

-and-

Glenn E. Siegel
Brian E. Greer
Andrew L. Buck
DECHERT LLP
1095 Avenue of the Americas
New York, New York 10036
Telephone: (212) 698-3500
Facsimile: (212) 698-3599
Email: brian.greer@dechert.com


ATTORNEYS FOR DEBTORS AND
DEBTORS IN POSSESSION

**September 21, 2009**

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................1

ARTICLE I      DEFINED TERMS, RULES OF INTERPRETATION AND
COMPUTATION OF TIME .................................................................1

   1.1    Defined Terms ................................................................................1

   1.2    Rules of Interpretation and Computation of Time...............................11

ARTICLE II     LIMITED CONSOLIDATION  OF ASSETS AND LIABILITIES OF
THE DEBTORS ...................................................................................11

ARTICLE III    TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS AND
PRIORITY TAX CLAIMS UNDER BANKRUPTCY CODE
SECTIONS 503(B), 507(A)(1), 507(A)(2) AND 507(A)(8) .........12

   3.1    Administrative Expense Claims .....................................................12

   3.2    Professional Fee Claims ...............................................................12

   3.3    DIP Claims ..................................................................................13

   3.4    Priority Tax Claims ......................................................................13

   3.5    Reclamation Claims......................................................................13

ARTICLE IV    CLASSIFICATION AND TREATMENT OF CLAIMS AND
INTERESTS ..........................................................................................14

   4.1    Summary......................................................................................14

   4.2    Classes of Claims and Interests ...................................................14

ARTICLE V     IMPLEMENTATION OF THE PLAN ...........................................17

   5.1    Continued Corporate Existence .....................................................17

   5.2    Continuation of Certain Retiree and Workers' Compensation Benefits ..............17

   5.3    Critical Vendors..........................................................................18

   5.4    Restructuring Transactions ............................................................18

   5.5    Cancellation of Securities .............................................................19

   5.6    Directors and Executive Officers ..................................................19

   5.7    New Securities.............................................................................19

   5.8    New Management Incentive Plan....................................................21

   5.9    Exit Facility ................................................................................21

   5.10  New Term Debt ...........................................................................21

   5.11  Release of Liens..........................................................................21

   5.12  Revesting of Assets .....................................................................22

# TABLE OF CONTENTS
### (continued)

| | | |
|---|---|---|
| 5.13 | Preservation of Rights of Action | 22 |
| 5.14 | Effectuating Documents; Further Transactions | 22 |
| ARTICLE VI | TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES | 22 |
| 6.1 | Assumption or Rejection of Executory Contracts and Unexpired Leases | 23 |
| ARTICLE VII | PROVISIONS REGARDING VOTING AND DISTRIBUTIONS UNDER THE PLAN AND TREATMENT, OF DISPUTED, CONTINGENT AND UNLIQUIDATED CLAIMS | 24 |
| 7.1 | Voting of Claims | 24 |
| 7.2 | Nonconsensual Confirmation | 24 |
| 7.3 | Alternate Treatment | 25 |
| 7.4 | Delivery of Distributions and Undeliverable or Unclaimed Distributions | 25 |
| 7.5 | Distribution Record Date With Respect to First Lien Claims and Second Lien Claims | 26 |
| 7.6 | Surrender of Canceled Securities | 26 |
| 7.7 | Means of Cash Payments | 26 |
| 7.8 | Timing and Calculation of Amounts to Be Distributed | 26 |
| 7.9 | Setoffs | 27 |
| 7.10 | Disputed Claims | 27 |
| 7.11 | Objections to and Resolution of Claims | 27 |
| ARTICLE VIII | CONDITIONS PRECEDENT TO CONFIRMATION AND CONSUMMATION OF THE PLAN | 28 |
| 8.1 | Conditions to Confirmation | 28 |
| 8.2 | Conditions to the Effective Date | 28 |
| 8.3 | Waiver of Conditions to Confirmation or the Effective Date | 28 |
| 8.4 | Effect of Nonoccurrence of Conditions to the Effective Date | 29 |
| ARTICLE IX | EFFECT OF CONFIRMATION OF PLAN | 29 |
| 9.1 | Term of Bankruptcy Injunction or Stays | 29 |
| 9.2 | Binding Effect | 29 |
| 9.3 | Discharge of Debtors | 29 |
| 9.4 | Settlement | 30 |
| 9.5 | Injunction | 30 |

9.6 Releases ........................................................................................................31

9.7 Debtors' Releases ...........................................................................................31

9.8 Other Releases ...............................................................................................32

9.9 Knowledge of Claims .....................................................................................33

9.10 The Cadillac Fairview Corporation Limited Indemnity .......................................33

ARTICLE X      RETENTION OF JURISDICTION..................................................33

ARTICLE XI      MISCELLANEOUS PROVISIONS ...............................................35

11.1 Governing Law ...............................................................................................35

11.2 Corporate Action ............................................................................................35

11.3 Exemption from Transfer Tax .........................................................................35

11.4 Severability of Plan Provisions........................................................................36

11.5 Modification of the Plan and Exhibits..............................................................36

11.6 Termination of Committees .............................................................................36

11.7 Revocation of the Plan....................................................................................36

11.8 Successors and Assigns .................................................................................37

11.9 Relationship Between Plan and Disclosure Statement ......................................37

11.10 Plan Supplement ............................................................................................37

11.11 Exculpation ...................................................................................................37

11.12 Service of Documents.....................................................................................37

# SCHEDULES[1]

Schedule 6.1                Executory Contracts and Unexpired Leases to Be Rejected

---

[1] The Debtors reserve the right to modify, amend, supplement, restate or withdraw any of the Schedules after they are Filed with the consent of the Required First Lien Lenders. The Debtors shall File all modified, amended, supplemented or restated Schedules as promptly as possible.

# INTRODUCTION

Arclin US Holdings Inc., Arclin U.S.A, Inc., Arclin Surfaces Inc., Arclin Chemicals Holding Inc., Arclin Industries U.S.A Inc., Arclin Fort Smith Inc. and Marmorandum LLC (collectively, the "**Debtors**") propose the following joint plan of reorganization (this "**Plan**") under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") for the resolution of the outstanding claims against and equity interests in the Debtors.

The Debtors are proponents of the Plan within the meaning of section 1129 of the Bankruptcy Code, 11 U.S.C. § 1129. Reference is made to the Debtors' disclosure statement, filed contemporaneously with the Plan (the "**Disclosure Statement**"), for a discussion of the Debtors' history, businesses, results of operations, historical financial information, projections and properties, and for a summary and analysis of the Plan. There also are other agreements and documents, which are or shall be filed with the Bankruptcy Court, that are referenced in the Plan or the Disclosure Statement and that shall be available for review.

In consideration for the obligations of the Debtors under the Plan and the consideration, contracts, instruments, releases, agreements, or documents to be entered into or delivered in connection with consummation of the Plan, any and all claims against the Debtors, OTPP, the Lenders, and DIP Lenders (each as defined below), among others, shall be released.

## ARTICLE I

## DEFINED TERMS, RULES OF INTERPRETATION
## AND COMPUTATION OF TIME

**1.1    Defined Terms**

As used in the Plan, capitalized terms have the meanings set forth below. Any term that is not otherwise defined herein, but that is used in the Bankruptcy Code or the Bankruptcy Rules (as each term is defined below), shall have the meaning given to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable.

**1.1.1  "Administrative Claim"** means a Claim for costs and expenses of administration allowed under sections 503(b), 507(b) or 1114(e)(2) of the Bankruptcy Code, including: (i) the actual and necessary costs and expenses incurred after the Petition Date of preserving the respective Estates and operating the businesses of the Debtors (such as wages, salaries, commissions for services and payments for inventories, leased equipment and premises); (ii) compensation for legal, financial advisory, accounting and other professional or management services and reimbursement of expenses awarded or allowed under sections 328, 330(a) or 331 of the Bankruptcy Code, including Professional Fee Claims; (iii) all fees and charges assessed against the Estates under chapter 123 of title 28, United States Code, 28 U.S.C. §§ 1911-1930; and (iv) all postpetition Intercompany Claims.

**1.1.2** **"Allowed Claim"** means:

    (a)    a Claim that (i) has been listed in an amount greater than zero by a particular Debtor on its Schedules as other than disputed, contingent or unliquidated and (ii) is not otherwise a Disputed Claim;

    (b)    a Claim (i) for which a proof of Claim or request for payment of Administrative Claim has been Filed by the applicable Bar Date or otherwise been deemed timely Filed under applicable law and (ii) that is not otherwise a Disputed Claim;

    (c)    a Claim that is allowed: (i) in any Stipulation of Amount and Nature of Claim executed by the applicable Debtor (or Reorganized Debtor) and Claim holder on or after the Effective Date; (ii) in any contract, instrument or other agreement entered into in connection with the Plan and, if prior to the Effective Date, approved by the Bankruptcy Court by Final Order; or (iii) pursuant to the terms of the Plan; or

    (d)    Claims under or evidenced by the DIP Facility.

**1.1.3** **"Arclin Holdings"** means Arclin US Holdings, Inc., a Delaware corporation.

**1.1.4** **"Arclin Chemicals"** means Arclin Chemicals Holding Inc., a Delaware corporation.

**1.1.5** **"Arclin Fort Smith"** means Arclin Fort Smith, Inc., a Delaware corporation.

**1.1.6** **"Arclin Industries"** means Arclin Industries U.S.A. Inc., a Delaware corporation.

**1.1.7** **"Arclin Surfaces"** means Arclin Surfaces, Inc., a Wisconsin corporation.

**1.1.8** **"Arclin U.S.A."** means Arclin U.S.A. Inc., an Oregon corporation.

**1.1.9** **"Avoidance Actions"** means, subject to the releases, exculpations and injunctions set forth in the Plan, collectively and individually: (i) preference actions, fraudulent conveyance actions, rights of setoff and other claims or causes of action under sections 510, 542, 544, 547, 548, 549, 550 and 553 of the Bankruptcy Code and other applicable bankruptcy or nonbankruptcy law; (ii) claims or causes of action arising out of illegal dividends or similar theories of liability; (iii) claims or causes of action based on piercing the corporate veil, alter ego liability or similar legal or equitable theories of recovery arising out of the ownership or operation of the Debtors; and (iv) to the extent that they are claims or causes of action of any of the Debtors, claims or causes of action based on unjust enrichment against an officer or director, for fraud, breach of fiduciary duty, mismanagement, malfeasance or relating to the provision of retiree medical benefits or director and officer liability insurance or indemnification.

**1.1.10 "Ballot"** means the form or forms distributed to each holder of an impaired Claim entitled to vote on the Plan on which the holder indicates acceptance or rejection of the Plan or any election for treatment of such Claim under the Plan.

**1.1.11 "Bankruptcy Code"** means title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as now in effect or hereafter amended.

**1.1.12 "Bankruptcy Court"** means the United States District Court having jurisdiction over the Reorganization Cases and, to the extent of any reference made pursuant to 28 U.S.C. § 157, the bankruptcy unit of such District Court.

**1.1.13 "Bankruptcy Rules"** means, collectively, the Federal Rules of Bankruptcy Procedure and the local rules of the Bankruptcy Court, as now in effect or hereafter amended.

**1.1.14 "Bar Date"** means _____ __, 2009, the date established by a Final Order of the Bankruptcy Court as the last date for timely filing a Proof of Claim in the Reorganization Cases.

**1.1.15 "Business Day"** means any day, other than a Saturday, Sunday or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

**1.1.16 "Canadian Court"** means the Ontario Superior Court of Justice (Commercial List).

**1.1.17 "Canadian Partnerships"** means Arclin Holdings I L.P. and Arclin Holdings II L.P.

**1.1.18 "Cash"** means legal tender of the United States of America and equivalents thereof.

**1.1.19 "CCAA Debtors"** means Arclin Canada Ltd., Arclin Holdings III Inc., Arclin Holdings IV Inc., Arclin Management Holdings Inc., Arclin Holdings GP I Inc. and Arclin Holdings GP II Inc.

**1.1.20 "CCAA Plan"** means a plan of arrangement or compromise proposed by the CCAA Debtors on terms reasonably acceptable to the Required First Lien Lenders in proceedings before the Canadian Court under the Companies' Creditors Arrangement Act, R.S.C. 1985, c. C-36, as amended, a copy of which shall be included in the Plan Supplement.

**1.1.21 "CCAA Plan Order"** means an order of the Canadian Court sanctioning the CCAA Plan.

**1.1.22 "Claim"** means a "claim," as defined in section 101(5) of the Bankruptcy Code, against any Debtor.

**1.1.23 "Class"** means a class of Claims or Interests, as described in Article IV.

**1.1.24 "Committee"** means the official committee of unsecured creditors appointed in the Reorganization Cases.

**1.1.25 "Confirmation"** means the entry of the Confirmation Order on the docket of the Bankruptcy Court.

**1.1.26 "Confirmation Date"** means the date on which the Bankruptcy Court enters the Confirmation Order on its docket within the meaning of Bankruptcy Rules 5003 and 9021.

**1.1.27 "Confirmation Hearing"** means the hearing held by the Bankruptcy Court on Confirmation of the Plan, as such hearing may be continued from time to time.

**1.1.28 "Confirmation Order"** means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

**1.1.29 "Critical Vendor Claims"** means the Critical Vendor Claims as defined in the Critical Vendor Order.

**1.1.30 "Critical Vendor Order"** means the Final Order Authorizing Debtors to Pay the Prepetition Claims of Certain Critical Vendors and Administrative Claim Holders and Granting Related Relief (D.I. 150) entered in the Reorganization Cases.

**1.1.31 "Cure Amount Claim"** means a Claim based upon a Debtor's defaults or any amount owed or potentially owed under an Executory Contract or Unexpired Lease at the time such contract or lease is assumed by that Debtor under section 365 of the Bankruptcy Code.

**1.1.32 "Debtors"** means Arclin, Arclin USA, Arclin Surfaces, Arclin Chemicals, Arclin Industries, Arclin Fort Smith, and Marmorandum.

**1.1.33 "Defined Benefit Plan"** means the defined benefit pension plan sponsored by Arclin USA.

**1.1.34 "DIP Claims"** means the secured super-priority claims in accordance with the DIP Facility.

**1.1.35 "DIP Facility"** means the Senior Secured, Super-Priority Debtor-in-Possession Credit Agreement, dated as of July 29, 2009, among Arclin Canada Ltd., as Canadian Borrower, Arclin, as US Borrower, certain of the Debtors and CCAA Debtors, as Guarantors, the DIP Lenders, UBS Securities LLC, as Joint Lead Arranger, Bookmanager and Syndication Agent, Black Diamond Commercial Finance, L.L.C., as Joint Lead Arranger, and UBS AG, Stamford Branch, as Administrative Agent and Collateral Agent.

**1.1.36 "DIP Lenders"** means any party that is or becomes a lender under the DIP Facility.

**1.1.37 "Disclosure Statement"** means the disclosure statement (including all exhibits and schedules thereto or referenced therein) that relates to the Plan, as approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code, as the same may be amended, modified or supplemented.

**1.1.38 "Disputed Claim"** means:

(a) if no proof of Claim has been Filed by the applicable Bar Date or has otherwise been deemed timely Filed under applicable law, a Claim that is listed on a Debtor's Schedules as disputed, contingent or unliquidated; or

(b) if a proof of Claim or request for payment of an Administrative Claim has been Filed by the Bar Date or has otherwise been deemed timely Filed under applicable law: (i) a Claim for which no corresponding Claim is listed on a Debtor's Schedules; (ii) a Claim for which a corresponding Claim is listed on a Debtor's Schedules as other than disputed, contingent or unliquidated, but the nature or amount of the Claim as asserted in the proof of Claim varies from the nature and amount of such Claim as it is listed on the Schedules; or (iii) a Claim for which a corresponding Claim is listed on a Debtor's Schedules as disputed, contingent or unliquidated.

**1.1.39 "Distribution Record Date"** means the close of business on the Confirmation Date.

**1.1.40 "Effective Date"** means a day, as determined by the Debtors, that is the Business Day as soon as reasonably practicable after all conditions to the Effective Date in Section 8.2 have been met or waived pursuant to Section 8.3.

**1.1.41 "Entity"** means a person (as defined in section 101(15) of the Bankruptcy Code), an estate, a trust, a governmental unit and the United States Trustee.

**1.1.42 "Equity Interest"** means any share of common stock or other instrument evidencing an ownership interest in any Debtor, whether or not transferable, and any option, warrant or right, contractual or otherwise, to subscribe for or otherwise acquire any such interest.

**1.1.43 "ERISA"** means the Employee Retirement Income Security Act of 1974 (as amended).

**1.1.44 "Estate"** means, as to each Debtor, the estate created for that Debtor in its Reorganization Case pursuant to section 541 of the Bankruptcy Code.

**1.1.45 "Executory Contract and Unexpired Lease"** means a contract or lease to which one or more of the Debtors is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

**1.1.46 "Exit Facility"** means that certain secured exit facility, in an amount not to exceed $40 million, obtained by the Reorganized Debtors and certain of the CCAA Debtors and Canadian Partnerships having the terms and conditions set forth in the Plan Supplement. The amounts owed under the Exit Facility will be allocated among the Reorganized Debtors, the CCAA Debtors and the Canadian Partnerships as set forth in the Restructuring Transactions and in the Plan Supplement.

**1.1.47 "File," "Filed" or "Filing"** means file, filed or filing with the Bankruptcy Court or its authorized designee in the Reorganization Cases.

**1.1.48 "Final Order"** means an order or judgment of the Bankruptcy Court, or other court, as entered on the docket in any Reorganization Case or the docket of such other court, that has not been reversed, stayed, modified or amended, and as to which the time to appeal or seek certiorari or move for a new trial, reargument or rehearing has expired, and no appeal or petition for certiorari or other proceedings for a new trial, reargument or rehearing has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been timely filed has been withdrawn or resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought or the new trial, reargument or rehearing shall have been denied or resulted in no modification of such order.

**1.1.49 "First Lien Agent"** means UBS, AG, Stamford Branch, as administrative agent to the First Lien Lenders under the First Lien Credit Agreement.

**1.1.50 "First Lien Claims"** means claims arising under the First Lien Credit Agreement, which shall be Allowed in the aggregate amount of no less than $206,962,994.

**1.1.51 "First Lien Credit Agreement"** means the First Lien Credit Agreement, dated as of July 10, 2007, among Arclin Canada Ltd., as Canadian Borrower, Arclin, as US Borrower, Arclin Holdings I L.P. the guarantors party thereto, the First Lien Lenders, UBS Securities LLC, as Arranger, Bookmanager and Syndication Agent, the First Lien Agent, as US Issuing Bank, Administrative Agent and Collateral Agent, UBS Loan Finance LLC, as US Swingline Lender, and UBS AG Canada Branch, as Canadian Swingline Lender.

**1.1.52 "First Lien Lenders"** means those lenders party to the First Lien Credit Agreement.

**1.1.53 "General Unsecured Claim"** means any Claim that is not an Administrative Claim, DIP Claim, Cure Amount Claim, Other Priority Claim, Priority Tax Claim, Other Secured Claim, First Lien Claim, Second Lien Claim or prepetition Intercompany Claim.

**1.1.54 "Intercompany Claim"** means any claim by any Debtor against another Debtor.

**1.1.55 "Lenders"** means, collectively, the First Lien Lenders and the Second Lien Lenders.

**1.1.56 "Liens"** means any mortgage, pledge, deed of trust, assessment, security interest, lease, lien, adverse claim, levy, charge or other encumbrance of any kind, or any conditional sale contract, title retention contract or other contract to give any of the foregoing.

**1.1.57 "Management Equity Interests"** means those New Equity Interests in New Arclin issued pursuant to the New Management Incentive Plan.

**1.1.58 "Marmorandum"** means Marmorandum LLC, a limited liability company formed under the laws of the state of Delaware.

**1.1.59 "New Arclin"** means an entity to be formed on or before the Effective Date.

**1.1.60 "New Equity Interests"** means the ordinary shares in New Arclin.

**1.1.61 "New Management Incentive Plan"** means a new management incentive plan to be adopted by the board of directors of New Arclin within 90 days after the Effective Date pursuant to the Plan.

**1.1.62 "New Term Debt"** means new second lien indebtedness of the Reorganized Debtors, New Arclin and certain of the CCAA Debtors and Canadian Partnerships on the terms and subject to the conditions set forth in the Plan Supplement in an aggregate face amount of up to $60 million. The New Term Debt will be allocated among the Reorganized Debtors, the CCAA Debtors and the Canadian Partnerships as set forth in the Restructuring Transactions and in the Plan Supplement.

**1.1.63 "New Warrants"** means the new warrants to be issued in accordance with the New Warrant Agreement.

**1.1.64 "New Warrant Agreement"** means the warrant agreement substantially in the form set forth in the Plan Supplement and described in Section 5.7.2. The New Warrant Agreement shall provide for, among other things, the distribution of warrants to purchase New Equity Interests as follows: (a) warrants to purchase an amount of New Equity Interests equal to 4% of the New Equity Interests outstanding as of the Effective Date, with a term of four years and a strike price equal to an equity value of $145 million; (b) warrants to purchase an amount of New Equity Interests equal to 4% of the New Equity Interests outstanding as of the Effective Date, with a term of five years and a strike price equal to an equity value of $145 million; (c) warrants to purchase an amount of New Equity Interests equal to 4% of the New Equity Interests outstanding as of the Effective Date, with a term of four years and a strike price equal to an equity value of $175 million; and (d) warrants to purchase an amount of New Equity Interests equal to 4% of the New Equity Interests outstanding as of the Effective Date, with a term of five years and a strike price equal to an equity value of $175 million.

**1.1.65 "Official Bankruptcy Forms"** means, collectively, forms used by the Debtors as required by the Bankruptcy Court, the Bankruptcy Code or Bankruptcy Rules.

**1.1.66 "Ordinary Course Professionals Order"** means the Order Authorizing Employment and Retention of Professionals Used in the Ordinary Course of Business (D.I. 145).

**1.1.67 "Organizational Documents"** means certificates of incorporation, certificates of formation or the like and by-laws, operating agreements or the like

**1.1.68 "Other Priority Claim"** means a Claim that is entitled to priority in payment pursuant to section 507(a) of the Bankruptcy Code that is not an Administrative Claim or a Priority Tax Claim.

**1.1.69 "Other Secured Claims"** means any Secured Claim other than the First Lien Claims and the Second Lien Claims.

**1.1.70 "OTPP"** means Ontario Teachers Pension Plan and its affiliates other than the Debtors and the CCAA Debtors.

**1.1.71 "OTPP Indemnity"** means the indemnity letter dated February 13, 2009 concerning The Cadillac Fairview Corporation Limited.

**1.1.72 "Petition Date"** means July 27, 2009.

**1.1.73 "Plan"** means this joint plan of reorganization for the Debtors, to the extent applicable to any Debtor, and all Exhibits attached hereto, referenced herein or set forth in the Plan Supplement, as the same may be amended, modified or supplemented.

**1.1.74 "Plan Supplement"** means the documents specified in Section 11.10 of the Plan, each of which shall be in form, scope and substance reasonably satisfactory to the Required First Lien Lenders.

**1.1.75 "Prepetiton Agents"** means the First Lien Agent and the Second Lien Agent.

**1.1.76 "Priority Tax Claim"** means a Claim that is entitled to priority in payment pursuant to sections 502(i) and 507(a)(8) of the Bankruptcy Code.

**1.1.77 "Professional"** means any professional employed in the Reorganization Cases pursuant to sections 327, 328 or 1103 of the Bankruptcy Code or any professional or other Entity seeking compensation or reimbursement of expenses in connection with the Reorganization Cases pursuant to section 503(b)(4) of the Bankruptcy Code.

**1.1.78 "Professional Fee Claim"** means a Claim under sections 328, 330(a), 331, 503 or 1103 of the Bankruptcy Code for compensation of a Professional or other Entity for services rendered or expenses incurred in the Reorganization Cases.

**1.1.79 "Professional Fee Order"** means the Administrative Order, pursuant to Sections 105(a) and 331 of the Bankruptcy Code, Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals (D.I. 146).

**1.1.80 "Pro Rata Share"** means a proportionate share, so that the ratio of the consideration distributed on account of an Allowed Claim to the extent of such Allowed Claim is the same as the ratio of the amount of the consideration distributed on account of all Allowed Claims in the respective Class (or Classes, if applicable) to the amount of all Allowed Claims in such Class (or Classes, if applicable).

**1.1.81 "Reclamation Claim"** means each Claim to the extent asserted against one or more of the Debtors pursuant to Bankruptcy Code section 546(c) or other applicable law.

**1.1.82 "Reinstated" or "Reinstatement"** means (a) leaving unaltered the legal, equitable and contractual rights to which a Claim entitles the holder of such Claim so as to leave such Claim unimpaired or (b) notwithstanding any contractual provision or applicable law that entitles the holder of such Claim to demand or receive accelerated payment of such Claim after the occurrence of a default (i) curing any such default that occurred before or after the Petition Date, other than a default of a kind specified in section 365(b)(2) of the Bankruptcy Code; (ii) reinstating the maturity of such Claim as such maturity existed before such default; (iii) compensating the holder of such Claim for any damages incurred as a result of any reasonable reliance by such holder on such contractual provision or such applicable law; and (iv) not otherwise altering the legal, equitable or contractual rights to which such Claim entitles the holder of such Claim, *provided, however*, that any contractual right that does not pertain to the payment when due of principal and interest on the obligation on which such Claim is based, including, but not limited to, financial covenant ratios, negative pledge covenants, covenants or restrictions on merger or consolidation, and affirmative covenants regarding corporate existence, prohibiting certain transactions or actions contemplated by the Plan, or conditioning such transactions or actions on certain factors, shall not be required to be reinstated in order to accomplish Reinstatement.

**1.1.83 "Reorganization Case"** means: (i) when used with reference to a particular Debtor, the chapter 11 case pending for that Debtor in the Bankruptcy Court, and (ii) when used with reference to all Debtors, the chapter 11 cases pending for the Debtors in the Bankruptcy Court

**1.1.84 "Reorganized Debtors"** means each of the Debtors and any successor thereto by merger, consolidation or otherwise after the Effective Date.

**1.1.85 "Required First Lien Lenders"** means (i) Black Diamond Capital Management, L.L.C., (ii) Silver Point Finance, LLC and (iii) First Lien Lenders having more than 50% of the sum of all loans, letters of credit and unused revolving and term loan commitments under the First Lien Credit Agreement, which may include Black Diamond Capital Management, L.L.C. and/or Silver Point Finance, LLC, *provided, however*, that the term "Required First Lien Lenders" shall not include Black Diamond Capital Management, L.L.C. or Silver Point Finance, LLC, as applicable, if Black Diamond Capital Management, L.L.C. or Silver Point Finance, LLC, as applicable, reduces its holdings of First Lien Claims to an amount equal to 20% or less of the total First Lien Claims.

**1.1.86 "Restructuring Transactions"** means the transactions described in Section 5.4 of this Plan, as shall be further set forth in the Plan Supplement.

**1.1.87 "Schedules"** means the schedules of assets and liabilities and the statements of financial affairs Filed by the Debtors, as required by section 521 of the Bankruptcy Code and the Official Bankruptcy Forms, as the same may have been or may be amended, modified or supplemented.

**1.1.88 "Second Lien Agent"** means The Bank of New York Mellon as successor administrative agent to the Second Lien Lenders.

**1.1.89 "Second Lien Claims"** means Claims arising under the Second Lien Credit Agreement, which shall be Allowed in the aggregate amount of no less than $30,573,308.

**1.1.90 "Second Lien Credit Agreement"** means the Second Lien Credit Agreement, dated as of July 10, 2007, among Arclin, as Borrower, Arclin Holdings I L.P., the guarantors party thereto, the Second Lien Lenders, UBS Securities LLC, as Arranger, Bookmanager, Documentation Agent and Syndication Agent, and the Second Lien Agent, as Administrative Agent and Collateral Agent.

**1.1.91 "Second Lien Deficiency Claim"** shall have the meaning set forth in Section 4.2.3(d) of the Plan.

**1.1.92 "Second Lien Lenders"** means those lenders party to the Second Lien Credit Agreement.

**1.1.93 "Secured Claim"** means a Claim that is secured by a lien on property in which an Estate has an interest or that is subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value of the Claim holder's interest in the applicable Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to sections 506(a) and, if applicable, 1129(b) of the Bankruptcy Code or, in the case of setoff, pursuant to section 553 of the Bankruptcy Code.

**1.1.94 "Stipulation of Amount and Nature of Claim"** means a stipulation or other agreement between the applicable Debtor and a holder of a Claim or Equity Interest, or an agreed order of the Bankruptcy Court establishing the amount and nature of a Claim or Equity Interest.

**1.1.95 "Stockholders Agreement"** means the shareholders agreement among New Arclin and the holders of New Equity Interests and New Warrants party thereto, substantially in the form set forth in the Plan Supplement and described in Section 5.7.3.

**1.1.96 "Tax"** means (i) any net income, alternative or add-on minimum, gross income, gross receipts, sales, use, ad valorem, value added, transfer, franchise, profits, license, property, environmental or other tax, assessment or charge of any kind whatsoever (together in each instance with any interest, penalty, addition to tax or additional amount) imposed by any federal, state, local or foreign taxing authority; or (ii) any liability for payment of any amounts of the foregoing types as a result of being a member of an affiliated, consolidated, combined or unitary group, or being a party to any agreement or arrangement whereby liability for payment of any such amounts is determined by reference to the liability of any other Entity.

**1.1.97 "Voting Deadline"** means December 1, 2009, at 5:00 p.m., Prevailing Eastern Time, which is the deadline for submitting Ballots to accept or reject the Plan in accordance with section 1126 of the Bankruptcy Code.

## 1.2 Rules of Interpretation and Computation of Time

**1.2.1 Rules of Interpretation.** For purposes of the Plan, unless otherwise provided herein: (i) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural; (ii) unless otherwise provided in the Plan, any reference in the Plan to a contract, instrument, release or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (iii) any reference in the Plan to an existing document or Exhibit Filed or to be Filed means such document or Exhibit, as it may have been or may be amended, modified or supplemented pursuant to the Plan or Confirmation Order; (iv) any reference to an Entity as a holder of a Claim or Interest includes that Entity's successors, assigns and affiliates; (v) all references in the Plan to Sections, Articles and Exhibits are references to Sections, Articles and Exhibits of or to the Plan; (vi) the words "herein," "hereunder" and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (vii) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (viii) subject to the provisions of any contract, certificates of incorporation, by-laws, similar constituent documents, instrument, release or other agreement or document entered into or delivered in connection with the Plan, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, federal law, including the Bankruptcy Code and the Bankruptcy Rules; and (ix) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply.

**1.2.2 Computation of Time.** In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

## ARTICLE II

## LIMITED CONSOLIDATION
## OF ASSETS AND LIABILITIES OF THE DEBTORS

Based upon the valuation of the Debtors' in relation to the First Lien Claims and Second Lien Claims, holders of General Unsecured Claims are not entitled to any distribution under the Plan. Accordingly, the Plan shall serve as a motion by the Debtors seeking entry of an order consolidating, upon the Effective Date, the Estates and all of the debts of all of the Debtors for the limited purposes of classifying and treating the Claims pursuant to Article IV hereof, including for voting, Confirmation and distributions to be made under the Plan. Pursuant to such order (which may be the Confirmation Order): (i) all assets and liabilities of the Debtors shall be deemed merged; (ii) all guarantees by one Debtor of the obligations of any other Debtor shall be deemed eliminated so that any Claim against any Debtor and any guarantee thereof executed by any other Debtor and any joint or several liability of any of the Debtors shall be deemed to be one obligation of the consolidated Debtors; (iii) each and every Claim Filed or to be Filed in the Reorganization Case of any of the Debtors shall be deemed Filed against the consolidated Debtors and shall be deemed one Claim against and a single obligation of the consolidated

Debtors; and (iv) subject to the Restructuring Transactions, prepetition Intercompany Claims shall be Reinstated, eliminated or extinguished as appropriate in the judgment of the Debtors and the Required First Lien Lenders to effectuate the Restructuring Transactions contemplated by the Plan. Such limited consolidation (other than for the purpose of implementing the Plan) shall not affect (i) the legal and corporate structures of the Debtors, subject to the right of the Debtors to effect the Restructuring Transactions as provided in Section 5.4; (ii) pre- and post-Effective Date guarantees that are required to be maintained (a) in connection with contracts or leases that were entered into during the Reorganization Cases or Executory Contracts and Unexpired Leases that have been or shall be assumed or (b) pursuant to the Plan; and (iii) the vesting of assets in the Reorganized Debtors.

Unless an objection to such limited consolidation is made in writing by any creditor or claimant affected by the Plan, Filed with the Bankruptcy Court and served on the parties listed in Section 11.12 on or before the Voting Deadline, or such other date as may be fixed by the Bankruptcy Court, the consolidation order (which may be the Confirmation Order) may be entered by the Bankruptcy Court. In the event any such objections are timely Filed, a hearing with respect thereto shall occur at the Confirmation Hearing. Notwithstanding this provision, nothing herein shall affect the obligation of each and every Debtor to pay quarterly fees to the Office of the United States Trustee in accordance with 28 U.S.C. § 1930.

## ARTICLE III

## TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS AND PRIORITY TAX CLAIMS UNDER BANKRUPTCY CODE SECTIONS 503(B), 507(A)(1), 507(A)(2) AND 507(A)(8)

### 3.1 Administrative Expense Claims

Except to the extent a holder of an Allowed Administrative Expense Claim has been paid by the Debtors prior to the Effective Date or agrees to a less favorable or equal, but different treatment, each holder of an Allowed Administrative Expense Claim (other than a Professional Fee Claim or DIP Claim) shall receive Cash in an amount equal to such Allowed Administrative Expense Claim on the later of the Effective Date, or the date such Administrative Expense Claim becomes an Allowed Administrative Expense Claim, or as soon thereafter as is practicable; *provided, however*, that Allowed Administrative Expense Claims representing liabilities incurred in the ordinary course of business by any Debtor or liabilities arising under loans or advances to or other obligations incurred by any Debtor shall be paid in full and performed by such Reorganized Debtor in the ordinary course of business in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing, or other documents relating to, such transactions.

### 3.2 Professional Fee Claims

The holders of Professional Fee Claims shall file their respective final fee applications for the allowance of compensation for services rendered and reimbursement of expenses incurred after

the Petition Date through the Confirmation Date by no later than the date that is sixty (60) days after the Effective Date, or such other date that may be fixed by the Bankruptcy Court. If granted by the Bankruptcy Court, such award shall be paid in full in Cash in such amount as is Allowed by the Bankruptcy Court either (a) on the date such Professional Fee Claim becomes an Allowed Professional Fee Claim, or as soon as practicable thereafter, or (b) upon such other terms as may be mutually agreed upon between such holder of an Allowed Professional Fee Claim and the Debtors. Professionals shall not be required to seek Court approval of any fees and expenses incurred after the Confirmation Date in connection with the Debtors or the Reorganization Cases. Requests for compensation under section 503(b) of the Bankruptcy Code must be filed with the Bankruptcy Court and served on the Debtors, the Committee and other parties in interest by no later than the date that is sixty (60) days after the Effective Date. If the Debtors, the Reorganized Debtors, or New Arclin and any such professional cannot agree on the amount of fees and expenses to be paid to such party, the amount of fees and expenses shall be determined by the Bankruptcy Court.

## 3.3    DIP Claims

Except to the extent the holders of DIP Claims agree to a different treatment, the holders of the Allowed DIP Claims shall receive Cash in an amount equal to such Allowed DIP Claims from the proceeds of the Exit Facility on the Effective Date.

## 3.4    Priority Tax Claims

(a)    <u>Payment</u>. Pursuant to section 1129(a)(9)(C) of the Bankruptcy Code, unless otherwise agreed by the holder of a Priority Tax Claim and the applicable Debtor, each holder of an Allowed Priority Tax Claim shall have its Claim Reinstated.

(b)    <u>Other Provisions Concerning Treatment of Priority Tax Claims</u>. Notwithstanding the provisions of Section 3.4(a), the holder of an Allowed Priority Tax Claim shall not be entitled to receive any payment on account of any penalty arising with respect to or in connection with the Allowed Priority Tax Claim. Any such Claim or demand for any such penalty shall be subject to treatment in Class 5 (General Unsecured Claims) if not subordinated to Class 5 Claims pursuant to an order of the Bankruptcy Court. The holder of an Allowed Priority Tax Claim shall not assess or attempt to collect such penalty from the Debtors, the Reorganized Debtors, or their property.

## 3.5    Reclamation Claims

To the extent holders of Reclamation Claims seek to assert their Reclamation Claims as Secured Claims under the Bankruptcy Code, the Debtors assert that the Reclamation Claims are not entitled to such treatment because the holders' reclamation rights were subject at all times to the Liens of the First Lien Lenders and the Second Lien Lenders, and the goods sought to be reclaimed were worth less than the value of such Liens. Accordingly, each holder of a Reclamation Claim shall be considered to be a holder of a Class 5 General Unsecured Claim with

respect to the value of the goods sold and delivered to the Debtors by such holder, except to the extent that such holder holds an Allowed Claim under section 503(b)(9) of the Bankruptcy Code.

# ARTICLE IV

## CLASSIFICATION AND TREATMENT
## OF CLAIMS AND INTERESTS

### 4.1    Summary

The categories listed below classify Claims against and Equity Interests in each of the Debtors for all purposes, including voting, confirmation and distribution pursuant hereto and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code. A Claim or Equity Interest shall be deemed classified in a particular Class only to the extent that the Claim or Equity Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Equity Interest qualifies within the description of such different Class. A Claim or Equity Interest is in a particular Class only to the extent that such Claim or Equity Interest is Allowed in that Class and has not been paid or otherwise satisfied prior to the Effective Date.

**THIS PLAN SUBSTANTIVELY CONSOLIDATES THE DEBTORS' ESTATES AS DESCRIBED IN ARTICLE II HEREIN. THE COMBINED ASSETS OF ALL OF THE DEBTORS SHALL SATISFY THE ALLOWED CLAIMS AGAINST EACH OF THE DEBTORS AND THEIR ESTATES AS PROVIDED HEREIN.**

**Summary of Classification and Treatment of Claims and Equity Interests**

| Class | Claim | Status | Voting Right |
|---|---|---|---|
| Class 1 | Other Priority Claims | Unimpaired | Deemed to Accept |
| Class 2 | First Lien Claims | Impaired | Entitled to Vote |
| Class 3 | Second Lien Claims | Impaired | Entitled to Vote |
| Class 4 | Other Secured Claims | Unimpaired | Deemed to Accept |
| Class 5 | General Unsecured Claims | Impaired | Deemed to Reject |
| Class 6 | Intercompany Claims | Impaired | Deemed to Reject |
| Class 7 | Equity Interests | Impaired | Deemed to Reject |

### 4.2    Classes of Claims and Interests

### 4.2.1    Class 1 – Other Priority Claims.

(a)    <u>Classification</u>: Class 1 comprises the Other Priority Claims against the Debtors.

(b) <u>Treatment</u>: Unless the holder of an Allowed Other Priority Claim has been paid prior to the Effective Date or agrees to a different treatment, on the Effective Date, each holder of an Allowed Other Priority Claim in Class 1 shall have its Claim Reinstated.

(c) <u>Voting</u>: Class 1 is unimpaired. Each holder of an Allowed Other Priority Claim in Class 1 is conclusively presumed to accept the Plan and is not entitled to vote to accept or reject the Plan.

**4.2.2 Class 2 – First Lien Claims**

(a) <u>Classification</u>: Class 2 comprises the First Lien Claims against the Debtors.

(b) <u>Allowance</u>: On the Effective Date, the First Lien Claims shall be Allowed in an aggregate amount of no less than $210,025,174.

(c) <u>Treatment</u>: The holders of First Lien Claims in Class 2 are entitled to receive 100% of the New Equity Interests. However, the holders of First Lien Claims in Class 2 have consented to (i) if Class 3 votes to accept the Plan, the distribution of New Equity Interests and New Warrants by the holders of First Lien Claims to the holders of Second Lien Claims as set forth in Section 4.2.3 of the Plan and (ii) the distribution of New Equity Interests pursuant to the New Management Incentive Plan. In accordance with the Restructuring Transactions, on the Effective Date, each holder of an Allowed First Lien Claim in Class 2 shall receive, in full satisfaction of its Claims against the Debtors, the CCAA Debtors and the Canadian Partnerships, its Pro-Rata Share of (i) 97% of the New Equity Interests outstanding as of the Effective Date and (ii) the New Term Debt.

(d) <u>Voting</u>: Class 2 is impaired. Each holder of an Allowed First Lien Claim in Class 2 is entitled to vote to accept or reject the Plan.

**4.2.3 Class 3 – Second Lien Claims**

(a) <u>Classification</u>: Class 3 comprises the Second Lien Claims against the Debtors.

(b) <u>Allowance</u>: On the Effective Date, the Second Lien Claims shall be Allowed in an aggregate amount of no less than $31,319,508.

(c) <u>Treatment</u>: Holders of Second Lien Claims in Class 3 shall not be entitled to, and shall not receive or retain, any property or interest in property from the Debtors or the Debtors' estates on account of such Second Lien Claims under the Plan. However, if Class 3 votes to accept the Plan, the holders of First Lien Claims have consented to the following distribution by the holders of First Lien Claims to holders of Second Lien Claims under the Plan: In accordance with the Restructuring Transactions, on the Effective Date, each holder of an Allowed

Second Lien Claim in Class 3 shall receive, in full satisfaction of its respective share of $12,664,365 of Second Lien Claims against the Debtors, the CCAA Debtors and the Canadian Partnerships, its Pro-Rata Share of (i) 3% of the New Equity Interests outstanding as of the Effective Date and (ii) the New Warrants.

(d)     <u>Second Lien Deficiency Claim</u>: The holders of Second Lien Claims shall have deficiency claims in the aggregate amount of $18,655,143 (the "**Second Lien Deficiency Claims**"), which shall be treated as General Unsecured Claims under the Plan.

(e)     <u>Voting</u>: Class 3 is impaired. Each holder of an Allowed Second Lien Claim in Class 3 is entitled to vote to accept or reject the Plan.

**4.2.4     Class 4 – Other Secured Claims.**

(a)     <u>Classification</u>: Class 4 comprises the Other Secured Claims against the Debtors.

(b)     <u>Treatment</u>: Unless the holder of an Allowed Other Secured Claim agrees to a different treatment, on the Effective Date, each holder of an Allowed Other Secured Claim shall have its Claim Reinstated.

(c)     <u>Voting</u>: Class 4 is unimpaired. Each holder of an Allowed Other Secured Claim in Class 4 is conclusively presumed to accept the Plan and is not entitled to vote to accept or reject the Plan.

**4.2.5     Class 5 – General Unsecured Claims.**

(a)     <u>Classification</u>: Class 5 comprises the General Unsecured Claims, including the Second Lien Deficiency Claims, against the Debtors.

(b)     <u>Treatment</u>: Holders of General Unsecured Claims in Class 5 shall not be entitled to, and shall not receive or retain, any property or interest in property on account of such General Unsecured Claims under the Plan.

(c)     <u>Voting</u>: Class 5 is impaired. Each holder of a General Unsecured Claim in Class 5 is conclusively presumed to reject the Plan and is not entitled to vote to accept or reject the Plan.

**4.2.6     Class 6 – Intercompany Claims.**

(a)     <u>Classification</u>: Class 6 comprises the prepetition Intercompany Claims amongst the Debtors.

(b)     <u>Treatment</u>: Intercompany Claims in Class 6 shall not be entitled to, and shall not receive or retain, any property or interest in property on account of such prepetition Intercompany Claims under the Plan, and such Claims shall be

Reinstated, extinguished or cancelled as appropriate in the judgment of the Debtors and the Required First Lien Lenders to effectuate the Restructuring Transactions contemplated by the Plan.

(c)     Voting: Class 6 is impaired. Each holder of an Intercompany Claim in Class 6 is conclusively presumed to reject the Plan and is not entitled to vote to accept or reject the Plan.

### 4.2.7   Class 7 – Equity Interests.

(a)     Classification: Class 7 comprises the Equity Interests of the Debtors.

(b)     Treatment: On the Effective Date, all Equity Interests of the Debtors (which shall include any and all Claims subordinated pursuant to section 510(b) of the Bankruptcy Code that are in any way arising from, related to, or in connection with the Equity Interests) shall not receive or retain any property under the Plan on account of such Equity Interests. In accordance with and subject to the Restructuring Transactions, however, the Equity Interests of the Debtors shall be reissued as appropriate to preserve the corporate structure of the Reorganized Debtors.

(c)     Voting: Class 7 is impaired. Each holder of Class 7 Equity Interests is presumed to reject the Plan and is not entitled to vote to accept or reject the Plan.

## ARTICLE V

## IMPLEMENTATION OF THE PLAN

### 5.1     Continued Corporate Existence

After the Effective Date, subject to the Restructuring Transactions, the Reorganized Debtors shall continue to exist as separate corporate entities in accordance with the applicable law in the applicable jurisdiction in which they are incorporated or formed under their respective Organizational Documents in effect before the Effective Date except as their Organizational Documents may be amended pursuant to this Plan. New Arclin shall be formed on or before the Effective Date. On the Effective Date, without any further corporate action, the Reorganized Debtors' Organizational Documents shall be amended as necessary to satisfy the provisions of this Plan and the Bankruptcy Code and shall include, pursuant to section 1123(a)(6) of the Bankruptcy Code, a provision prohibiting the issuance of non-voting equity securities.

### 5.2     Continuation of Certain Retiree and Workers' Compensation Benefits

**5.2.1   Retiree Benefits.** From and after the Effective Date, the Reorganized Debtors will be obligated to pay retiree benefits and any similar health, disability or death benefits in accordance with the terms of the retiree benefit plans or other agreements governing the payment of such

benefits (all as defined in and in accordance with section 1114(a) of the Bankruptcy Code), subject to any rights to amend, modify or terminate such benefits under the terms of the applicable retiree benefits plan, other agreement or applicable nonbankruptcy law. In addition, the Debtors shall continue the Defined Benefit Plan after the Effective Date and the Reorganized Debtors shall comply with all funding obligations under the Defined Benefit Plan or under applicable law including, without limitation, any amounts that were required to be paid by the Debtors prior to the Petition Date; *provided, however*, the board of directors of the Reorganized Debtors or New Arclin may determine after the Effective Date to amend, modify or terminate the Defined Benefit Plan in accordance with ERISA.

**5.2.2  Workers' Compensation Benefits.** From and after the Effective Date, the Reorganized Debtors will continue to pay Claims arising before or after the Petition Date under their existing workers' compensation programs.

## 5.3  Critical Vendors

Notwithstanding any provision of the Plan, the Debtors, Reorganized Debtors, and New Arclin shall be authorized in their sole discretion to make payments in accordance with the Critical Vendor Order.

## 5.4  Restructuring Transactions

On the Effective Date, and pursuant to the Plan or the applicable Plan Supplement documents, the applicable Debtors or Reorganized Debtors shall enter into the Restructuring Transactions contemplated herein and in the Plan Supplement, and shall take any actions as may be necessary or appropriate to effect a restructuring of their respective businesses or the overall organizational structure of the Reorganized Debtors. The Restructuring Transactions may include one or more mergers, consolidations, restructurings, conversions, dissolutions, transfers or liquidations as may be determined by the Debtors or the Reorganized Debtors to be necessary or appropriate. The actions to effect the Restructuring Transactions may include: (a) the execution and delivery of appropriate agreements or other documents of merger, consolidation, restructuring, conversion, disposition, transfer, dissolution or liquidation containing terms that are consistent with the terms of the Plan and that satisfy the applicable requirements of applicable state law or other applicable law and any other terms to which the applicable entities may agree; (b) the execution and delivery of appropriate instruments of transfer, assignment, assumption or delegation of any asset, property, right, liability, debt or obligation on terms consistent with the terms of the Plan and having other terms for which the applicable parties agree; (c) the filing of appropriate certificates or articles of incorporation, reincorporation, merger, consolidation, conversion or dissolution pursuant to applicable state law; and (d) all other actions that the applicable entities determine to be necessary or appropriate, including making filings or recordings that may be required by applicable state law in connection with the restructuring transactions. The chairman of the board of directors, the president, the chief executive officer and the chief financial officer of each Debtor shall be authorized to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents, and take such other actions, as may be necessary or appropriate, to effectuate and further evidence

the terms and conditions of this Plan. The secretary or assistant secretary of the appropriate Debtor shall be authorized to certify or attest to any of the foregoing actions.

### 5.5 Cancellation of Securities

On the Effective Date, except as otherwise provided for herein, in accordance with and subject to the Restructuring Transactions (i) the Equity Interests and the notes or guarantees under the First Lien Credit Agreement and the Second Lien Credit Agreement, to the extent not already cancelled, shall be deemed cancelled and of no further force or effect without any further action on the part of the Bankruptcy Court or any other person and (ii) the obligations of the Debtors under the Equity Interests and the notes or guarantees under the First Lien Credit Agreement and the Second Lien Credit Agreement and under the Debtors' certificates of incorporation, certificates of formation, limited liability company agreements, any agreements, indentures, or certificates of designations governing the Equity Interests, shall be terminated and discharged; *provided, however*, that termination and discharge of the Debtors' obligations under the Debtors' certificates of incorporation, shall not include a termination or discharge of the Debtors' obligations to indemnify, defend or insure any of the Debtors' current and former directors and officers.

### 5.6 Directors and Executive Officers

On the Effective Date, the term of each member of the current board of directors of the Debtors shall automatically expire. The initial members of New Arclin's Board of Directors shall consist of New Arclin's Chief Executive Officer, 2 members to be selected by Black Diamond Capital Management, L.L.C., 2 members to be selected by Silver Point Finance, LLC, 1 member to be selected by all holders of First Lien Claims, and 1 member to be selected by all holders of First Lien Claims other than Black Diamond Capital Management, L.L.C. and Silver Point Finance, LLC. The Debtors shall identify the individuals proposed to serve as directors of New Arclin prior to the Effective Date. The board of directors of New Arclin shall have the responsibility for the management, control, and operation of New Arclin on and after the Effective Date. The Debtors' chief executive officer and chief financial officer shall maintain their current positions as executive officers of the Reorganized Debtors on and after the Effective Date. The board of directors and the officers for each of the Debtors other than New Arclin shall be identified prior to the Effective Date.

### 5.7 New Securities

**5.7.1 New Equity Interests.** As of the Effective Date, New Arclin shall have ten million (10,000,000) shares of issued and outstanding New Equity Interests, held as follows: (i) holders of the Allowed First Lien Claims shall hold 97%, or nine million seven-hundred thousand (9,700,000) shares, of such issued and outstanding New Equity Interests and (ii) holders of the Allowed Second Lien Claims shall hold 3%, or three-hundred thousand (300,000) shares, of New Equity Interests, subject in each case to dilution by (a) a reserve of an amount of New Equity Interests equal to 10% of the New Equity Interests issued and outstanding as of the Effective Date, to be issued in the amounts set forth in and pursuant to the terms of the New Management

Incentive Plan and (b) New Equity Interests to be issued in connection with the New Warrants. New Arclin shall be authorized to issue twenty million (20,000,000) New Equity Interests as of the Effective Date

**5.7.2  New Warrants.**  On the Effective Date, New Arclin shall issue to holders of the Allowed Second Lien Claims the New Warrants in accordance with the terms and conditions of the New Warrant Agreement.

**5.7.3  Stockholders Agreement**.  As of the Effective Date, each person or entity that receives New Equity Interests or New Warrants shall execute a joinder to the Stockholders Agreement as a condition to receiving their distributions under the Plan.  All participants under the New Management Incentive Plan shall execute a joinder to the Stockholders Agreement.

**5.7.4  Distribution**.  The issuance, grant, and reservation of the New Equity Interests authorized in this Article V shall not require any further act or action by any stockholder or creditor of the Debtors, under any applicable law, regulation, order or rule.  All securities to be issued shall be deemed issued as of the Effective Date regardless of the date on which they are actually distributed.

**5.7.5  Securities Issuance in Accordance with Section 1145.**

(a)  The Confirmation Order shall provide that the issuance of New Equity Interests on account of Claims and in accordance with the New Management Incentive Plan shall be exempt from the registration requirements of the Securities Act to the extent provided by section 1145 of the Bankruptcy Code.

(b)  Certificates evidencing shares of the New Equity Interests that are received by holders of ten percent (10%) or more of the outstanding New Equity Interests calculated on a fully diluted basis or by holders that are otherwise "underwriters" within the meaning of section 1145(b) of the Bankruptcy Code with respect to the securities shall bear a legend substantially in the form below:

THE SECURITIES REPRESENTED BY THIS CERTIFICATE WERE ORIGINALLY ISSUED ON JANUARY __, 2010 PURSUANT TO THE JOINT PLAN OF REORGANIZATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE OF ARCLIN US HOLDINGS INC. AND CERTAIN OF ITS SUBSIDIARIES, DATED AS OF SEPTEMBER 21, 2009 AND CONFIRMED BY THE BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE, ON DECEMBER __, 2009.  THESE SECURITIES WERE ISSUED PURSUANT TO AN EXEMPTION FROM THE REGISTRATION REQUIREMENT OF SECTION 5 OF THE SECURITIES ACT OF 1933, AS AMENDED, (THE "ACT") PROVIDED BY SECTION 1145 OF THE BANKRUPTCY CODE, 11 U.S.C. § 1145, AND HAVE NOT BEEN REGISTERED UNDER THE ACT, AND TO THE EXTENT THAT THE HOLDER OF THESE SECURITIES IS AN "UNDERWRITER" AS DEFINED IN SECTION 1145(b)(1) OF THE BANKRUPTCY CODE, THESE SECURITIES MAY NOT BE SOLD OR

TRANSFERRED IN THE ABSENCE OF AN EFFECTIVE REGISTRATION STATEMENT UNDER THE ACT OR AN EXEMPTION FROM REGISTRATION THEREUNDER.

Any holder that would receive legended securities as provided above may instead receive certificates evidencing New Equity Interests, as applicable, without such legend if, prior to the Effective Date, such entity delivers to New Arclin (i) an opinion of counsel reasonably satisfactory to New Arclin and the board of directors of New Arclin to the effect that the shares of New Equity Interests to be received by such entity should not be subject to the restrictions applicable to "underwriters" under section 1145(b) of the Bankruptcy Code and may be sold without registration under the Securities Act and (ii) a certification that it is not an "underwriter" within the meaning of section 1145(b) of the Bankruptcy Code. Any holder receiving securities so legended may subsequently deliver the opinion and certification referred to in (i) and (ii) above and New Arclin shall remove such legend from all such certificates held by such holder.

**5.8     New Management Incentive Plan**

In connection with the Plan, the board of directors of New Arclin, in consultation with the chief executive officer of New Arclin, shall adopt within 90 days after the Effective Date the New Management Incentive Plan, which shall provide for, among other things, a reserve of 10% of the New Equity Interests issued and outstanding as of the Effective Date for the benefit of management of the Reorganized Debtors and New Arclin. The New Management Incentive Plan is intended to provide incentives to certain key employees to continue their efforts to foster and promote the long-term growth and performance of New Arclin.

**5.9     Exit Facility**

On the Effective Date, New Arclin, the Reorganized Debtors and certain of the CCAA Debtors and Canadian Partnerships, as borrowers or guarantors, shall enter into the Exit Facility. The Exit Facility shall provide liquidity for working capital and other general corporate purposes of New Arclin following the conclusion of the Reorganization Cases. In addition, the proceeds of the Exit Facility shall be used to repay in full all amounts outstanding under the DIP Facility, Allowed Administrative Claims (including Professional Fee Claims); Priority Tax Claims, Other Priority Claims, and Other Secured Claims, and may be used to fund other indebtedness of the Reorganized Debtors. The terms of the Exit Facility shall be set forth in the Plan Supplement.

**5.10     New Term Debt**

On the Effective Date, the Reorganized Debtors, New Arclin and certain of the CCAA Debtors and Canadian Partnerships, as borrowers or guarantors, shall issue the New Term Debt to the holders of Allowed First Lien Claims in accordance with Section 4.2.2 of the Plan.

## 5.11    Release of Liens

Except as otherwise provided in the Plan or in any contract, instrument, release or other agreement or document entered into or delivered in connection with the Plan, on the Effective Date and concurrently with the applicable distributions to be made pursuant to Article VII, all Liens against the property of any Estate shall be fully released and discharged, and all of the right, title and interest of any holder of such Liens, including any rights to any collateral thereunder, shall attach to and be enforceable solely against the assets of the Reorganized Debtors in accordance with and subject to the terms of the Plan. All such Liens against these assets shall be fully released and discharged upon the holder of the lien's receiving its full distribution under the Plan or upon the Effective Date if the holder of the Lien is not entitled to any distribution under the Plan.

## 5.12    Revesting of Assets

The property of each Debtor's estate shall revest in the Reorganized Debtors on the Effective Date. Thereafter, each Reorganized Debtor may operate its businesses and may use, acquire, and dispose of property free of any restrictions of the Bankruptcy Code and the Bankruptcy Court. As of the Effective Date, all property of the Reorganized Debtors shall be free and clear of all Claims, Equity Interests, charges and Liens except as specifically provided or contemplated herein, in connection with the Exit Facility, New Term Debt, Confirmation Order, CCAA Plan or CCAA Plan Order. Without limiting the generality of the foregoing, the Reorganized Debtors may, without application to or approval by the Bankruptcy Court, pay professional fees and expenses incurred after the Confirmation Date.

## 5.13    Preservation of Rights of Action

Except as otherwise provided herein or in the Confirmation Order, or in any contract, instrument, release, indenture or other agreement entered into in connection with this Plan, in accordance with section 1123(b) of the Bankruptcy Code, following the Confirmation Date, the Reorganized Debtors shall retain and may enforce, sue on, settle, or compromise (or decline to do any of the foregoing) all claims, rights or causes of action (including the Avoidance Actions), suits, and proceedings, whether in law or in equity, whether known or unknown, that the Debtors or their estates may hold against any person or entity without further approval of the Bankruptcy Court. The Reorganized Debtors or their successor(s) may pursue such retained claims, rights or causes of action, suits, or proceedings as appropriate, in accordance with the best interests of the Reorganized Debtors or their successor(s) who hold such rights.

## 5.14    Effectuating Documents; Further Transactions

The Chief Executive Officer, President and Chief Financial Officer of each Debtor, Reorganized Debtor, or New Arclin shall be authorized to execute, deliver, file or record such contracts, instruments, releases and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and implement the provisions of the Plan. The Secretary

or any Assistant Secretary of each Debtor, Reorganized Debtor, or New Arclin shall be authorized to certify or attest to any of the foregoing actions.

## ARTICLE VI

## TREATMENT OF EXECUTORY CONTRACTS
## AND UNEXPIRED LEASES

**6.1    Assumption or Rejection of Executory Contracts and Unexpired Leases**

**6.1.1    Executory Contracts and Unexpired Leases.**    Pursuant to sections 365(a) and 1123(b)(2) of the Bankruptcy Code, all Executory Contracts and Unexpired Leases that exist between a Debtor and any person shall be deemed assumed by such Debtor as of the Effective Date, except for any Executory Contract or Unexpired Lease (i) that has been rejected pursuant to an order of the Bankruptcy Court entered prior to the Effective Date, (ii) as to which a motion for approval of the rejection of such Executory Contract or Unexpired Lease has been filed and served prior to the Effective Date or (iii) that is set forth in Schedule 6.1 attached hereto; provided, however, that the Debtors reserve the right, on or prior to the Effective Date, to amend Schedule 6.1 to delete any Executory Contract or Unexpired Lease therefrom or add any Executory Contract or Unexpired Lease thereto, in which event such Executory Contract(s) or Unexpired Lease(s) shall be deemed to be assumed by the applicable Debtor or rejected, as the case may be.  The Debtors shall provide notice of any amendments to Schedule 6.1 to the parties to the Executory Contracts and Unexpired Leases affected thereby and to counsel to the Committee.  The listing of a document on Schedule 6.1 shall not constitute an admission by the Debtors that such document is an Executory Contract or an Unexpired Lease or that any Debtor has any liability thereunder.

**6.1.2    Real Property**.    Each Executory Contract and Unexpired Lease that is assumed and relates to the use, ability to acquire, or occupancy of real property shall include (i) all modifications, amendments, supplements, restatements, or other agreements made directly or indirectly by any agreement, instrument, or other document that in any manner affect such Executory Contract or Unexpired Lease and (ii) all Executory Contracts or Unexpired Leases appurtenant to the premises, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, powers, uses, usufructs, reciprocal easement agreements, vaults, tunnel or bridge agreements or franchises, and any other interests in real estate or rights in rem related to such premises, unless any of the foregoing agreements has been rejected pursuant to an order of the Bankruptcy Court.

**6.1.3    Insurance Policies.**    All of the Debtors' insurance policies including, without limitation, insurance policies for the Debtors' directors and officers, and any agreements, documents or instruments relating thereto, are treated as Executory Contracts under the Plan.  Nothing contained in this Section 6.1.3 shall constitute or be deemed a waiver of any Cause of Action that the Debtors may hold against any entity, including, without limitation, the insurer under any of the Debtors' policies of insurance.

**6.1.4   Approval of Assumption, Assumption and Assignment or Rejection of Executory Contracts and Unexpired Leases.** Entry of the Confirmation Order shall, subject to and upon the occurrence of the Effective Date, constitute (i) the approval, pursuant to sections 365(a) and 1123(b)(2) of the Bankruptcy Code, of the assumption and assignment of the Executory Contracts and Unexpired Leases assumed and assigned pursuant to Section 6.1 hereof, (ii) the extension of time, pursuant to section 365(d)(4) of the Bankruptcy Code, within which the Debtors may assume, assume and assign, or reject the Unexpired Leases specified in Section 6.1 hereof through the date of entry of an order approving the assumption, assumption and assignment, or rejection of such Unexpired Leases and (iii) the approval, pursuant to sections 365(a) and 1123(b)(2) of the Bankruptcy Code, of the rejection of the Executory Contracts and Unexpired Leases rejected pursuant to Section 6.1 hereof.

**6.1.5   Cure of Defaults.** Except as may otherwise be agreed to by the parties, within thirty (30) days after the Effective Date, each Reorganized Debtor shall cure any and all undisputed defaults under any  Executory Contract or Unexpired Lease assumed by such Reorganized Debtor pursuant to Section 6.1 hereof, in accordance with section 365(b)(1) of the Bankruptcy Code. All disputed defaults required to be cured shall be cured either within thirty (30) days after the entry of a Final Order determining the amount, if any, of a Reorganized Debtor's liability with respect thereto, or as may otherwise be agreed to by the parties.

**6.1.6   Bar Date for Filing Proofs of Claim Relating to Executory Contracts and Unexpired Leases Rejected Pursuant to the Plan.** Claims arising out of the rejection of an Executory Contract or Unexpired Lease pursuant to Section 6.1 of the Plan must be filed with the Bankruptcy Court and served upon the Debtors or, on and after the Effective Date, the Reorganized Debtors, no later than thirty (30) days after the later of (i) notice of entry of an order approving the rejection of such Executory Contract or Unexpired Lease is mailed to the contract party, (ii) notice of entry of the Confirmation Order is mailed to the contract party and (iii) notice of an amendment to Schedule 6.1 affecting such Executory Contract or Unexpired Lease is mailed to the contract party. All such Claims not filed within such time shall be forever barred from assertion against the Debtors, their estates, the Reorganized Debtors, and their property.

**ARTICLE VII**

**PROVISIONS REGARDING VOTING AND
DISTRIBUTIONS UNDER THE PLAN AND TREATMENT,
OF DISPUTED, CONTINGENT AND UNLIQUIDATED CLAIMS**

**7.1   Voting of Claims**

Each holder of an Allowed Claim in an impaired Class of Claims entitled to vote on the Plan pursuant to Article IV of the Plan shall be entitled to vote separately to accept or reject the Plan as provided in the Bankruptcy Code, Bankruptcy Rules, and any order or orders of the Bankruptcy Court.

## 7.2     Nonconsensual Confirmation

If any impaired Class of Claims entitled to vote shall not accept the Plan by the requisite statutory majorities provided in section 1126(c) of the Bankruptcy Code, the Debtors shall request the Bankruptcy Court to confirm the Plan under section 1129(b) of the Bankruptcy Code. With respect to impaired Classes of Claims that are deemed to reject the Plan, the Debtors shall request the Bankruptcy Court to confirm the Plan under section 1129(b) of the Bankruptcy Code.

## 7.3     Alternate Treatment

Notwithstanding any provision herein to the contrary, any holder of an Allowed Claim may receive, instead of the distribution or treatment to which it is entitled hereunder, any other distribution or treatment to which it and the Debtors may agree to in writing; *provided, however,* that such other distribution or treatment shall not provide a return having a present value in excess of the present value of the distribution or treatment that otherwise would be given to such holder pursuant to this Plan.

## 7.4     Delivery of Distributions and Undeliverable or Unclaimed Distributions

**7.4.1    Delivery of Distributions Generally.**  Distributions to holders of Allowed Claims shall be made by the Reorganized Debtors (i) at the addresses set forth on the respective proofs of Claim Filed by holders of such Claims; (ii) at the addresses set forth in any written certification of address change delivered to the Reorganized Debtors (including pursuant to a letter of transmittal delivered to the Reorganized Debtor) after the date of Filing of any related proof of Claim; or (iii) at the addresses reflected in the applicable Debtor's Schedules if no proof of Claim has been Filed and such Reorganized Debtor has not received a written notice of a change of address.

**7.4.2    Undeliverable Distributions**

(a)     Holding and Investment of Undeliverable Distributions.  If any distribution to a holder of an Allowed Claim is returned to the Reorganized Debtors as undeliverable, no further distributions shall be made to such holder unless and until the Reorganized Debtors are notified by written certification of such holder's then-current address.  Subject to Section 7.4.2(b) below (regarding the failure to claim undeliverable distributions), undeliverable distributions shall remain in the possession of the Reorganized Debtors until such time as a distribution becomes deliverable.

(b)     Failure to Claim Undeliverable Distributions.  Any holder of an Allowed Claim that does not assert a claim pursuant to the Plan for an undeliverable distribution to be made by the Reorganized Debtors within two years after the later of (i) the Effective Date and (ii) the last date on which a distribution was deliverable to such holder shall have its claim for such undeliverable distribution discharged and

shall be forever barred from asserting any such claim against the Reorganized Debtors.

## 7.5 Distribution Record Date With Respect to First Lien Claims and Second Lien Claims

As of the close of business on the Distribution Record Date, the then-holders of First Lien Claims and Second Lien Claims shall be established by the First Lien Agent and the Second Lien Agent based on their respective books and records. The Reorganized Debtors shall have no obligation to recognize the transfer or sale of any First Lien Claim or Second Lien Claim that occurs after the close of business on the Distribution Record Date and shall be entitled for all purposes under the Plan to recognize and make distributions only to those holders who are holders of such Claims as of the close of business on the Distribution Record Date.

## 7.6 Surrender of Canceled Securities

As a condition precedent to receiving any distribution pursuant to the Plan with respect to the Debtors on account of an Allowed Claim evidenced by the notes, instruments, securities or other documentation canceled with respect to the Debtors, the holder of such Claim must tender, as specified in this Section 7.6, the applicable notes, instruments, securities or other documentation evidencing such Claim to the Reorganized Debtors, together with any letter of transmittal required by the Reorganized Debtors. All such notes, instruments, securities or other documentation shall be marked as canceled with respect to the Debtors.

## 7.7 Means of Cash Payments

Except as otherwise specified herein, Cash payments made pursuant to the Plan shall be in U.S. currency by checks drawn on a domestic bank selected by the Reorganized Debtors or, at the option of the Reorganized Debtors, by wire transfer from a domestic bank; *provided, however,* that Cash payments to foreign holders of Allowed Claims may be made, at the option of the Reorganized Debtors, in such funds and by such means as are necessary or customary in a particular foreign jurisdiction.

## 7.8 Timing and Calculation of Amounts to Be Distributed

**7.8.1 Allowed Claims**. On the Effective Date or as otherwise provided herein, each holder of a First Lien Claim, a Second Lien Claim, an Other Secured Claim an Administrative Claim, an Other Priority Claim, a Priority Tax Claim or a DIP Claim Allowed as of the Effective Date shall receive its distribution in full on account of such Claim.

**7.8.2 De Minimis Distributions**. The Reorganized Debtors shall not distribute Cash to the holder of an Allowed Claim if the total aggregate amount of Cash to be distributed on account of such Claim is less than $25. Any holder of an Allowed Claim on account of which the total aggregate amount of Cash to be distributed is less than $25 shall have its claim for such distribution discharged and shall be forever barred from asserting any such claim against the

Debtors, their Estates, the Reorganized Debtors, New Arclin or their respective property. Any Cash not distributed in accordance with the terms of this subsection shall be the property of the Reorganized Debtors and/or New Arclin, free of any restrictions thereon.

### 7.8.3 Compliance with Tax Requirements.

(a) In connection with the Plan, to the extent applicable, the Reorganized Debtors shall comply with all tax withholding and reporting requirements imposed on them by any governmental unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements. The Reorganized Debtors shall be authorized to take any actions that may be necessary or appropriate to comply with such withholding and reporting requirements.

(b) Notwithstanding any other provision of the Plan, each Entity receiving a distribution of Cash, New Equity Interests, New Warrants or New Term Debt pursuant to the Plan shall have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed on it by any governmental unit on account of such distribution, including income, withholding and other tax obligations.

### 7.9 Setoffs

Except with respect to claims of a Debtor released pursuant to the Plan or any contract, instrument, release or other agreement or document entered into or delivered in connection with the Plan, a Debtor may, pursuant to section 553 of the Bankruptcy Code or applicable nonbankruptcy law, set off against any Allowed Claim and the distributions to be made pursuant to the Plan on account of such Claim (before any distribution is made on account of such Claim) the claims, rights and causes of action of any nature that the applicable Debtor may hold against the holder of such Allowed Claim; *provided, however,* that neither the failure to effect a setoff nor the allowance of any Claim hereunder shall constitute a waiver or release by the applicable Debtor of any claims, rights and causes of action that the Debtor may possess against such Claim holder.

### 7.10 Disputed Claims

No distributions shall be made on account of a Disputed Claim, or undisputed portion thereof, unless and until such Disputed Claim becomes an Allowed Claim by a Final Order. The holder of a Disputed Claim that becomes an Allowed Claim subsequent to the Effective Date shall receive the distribution that would have been made to such holder under the Plan if the Disputed Claim had been an Allowed Claim on or prior to the Effective Date, without any post-Effective Date interest thereon, within sixty (60) days after such Disputed Claim becomes an Allowed Claim, unless otherwise provided for herein or by the Bankruptcy Court.

**7.11    Objections to and Resolution of Claims**

Except as to applications for allowance of Professional Fee Claims, the Reorganized Debtors shall, on and after the Effective Date, have the right to make and file objections to Claims. Any objections to a proof of Claim shall be served and filed on or before the latest of (a) one hundred and twenty (120) days after the Effective Date, (b) forty-five (45) days after the proof of Claim is filed with the Bankruptcy Court, and (c) such date as may be fixed by the Bankruptcy Court. On and after the Effective Date, the Reorganized Debtors and New Arclin shall have the authority to compromise, settle, otherwise resolve or withdraw any objections to Claims and compromise, settle or otherwise resolve Disputed Claims without approval of the Bankruptcy Court.

**ARTICLE VIII**

**CONDITIONS PRECEDENT TO CONFIRMATION
AND CONSUMMATION OF THE PLAN**

**8.1    Conditions to Confirmation**

The Bankruptcy Court shall not enter the Confirmation Order unless and until the following conditions have been satisfied or duly waived pursuant to Section 8.3:

**8.1.1**    The Confirmation Order shall be reasonably acceptable in form and substance to the Debtors and the Required First Lien Lenders.

**8.1.2**    All Exhibits to the Plan, including the Plan Supplement, shall be in form and substance reasonably satisfactory to the Required First Lien Lenders.

**8.2    Conditions to the Effective Date**

The Effective Date shall not occur, and the Plan shall not be consummated, unless and until each of the following conditions have been satisfied or duly waived pursuant to Section 8.3:

**8.2.1**    The Confirmation Order has been entered, has not been reversed, stayed, modified or amended and has become a Final Order.

**8.2.2**    The Bankruptcy Court shall have entered an order (contemplated to be part of the Confirmation Order) authorizing the Debtors, the Reorganized Debtors and New Arclin to take all actions necessary or appropriate to implement the Plan, and the other transactions contemplated by the Plan and the implementation and consummation of all contracts, instruments, releases and other agreement or documents created in connection with the Plan.

**8.2.3**    The closing of the Exit Facility shall have occurred.

**8.2.4** The Canadian Court shall have made the CCAA Plan Order and the transactions contemplated under the CCAA Plan have been completed or waived in accordance with the terms of the CCAA Plan.

**8.3    Waiver of Conditions to Confirmation or the Effective Date**

The conditions to Confirmation set forth in Sections 8.1 and the conditions to the Effective Date set forth in Sections 8.2 may be waived in whole or in part by the Debtors, with the consent of the Required First Lien Lenders, at any time without an order of the Bankruptcy Court.

**8.4    Effect of Nonoccurrence of Conditions to the Effective Date**

If each of the conditions to the Effective Date is not satisfied or duly waived in accordance with Section 8.3, then upon motion by the Debtors made before the time that each of such conditions has been satisfied or duly waived and upon notice to such parties in interest as the Bankruptcy Court may direct, the Confirmation Order shall be vacated by the Bankruptcy Court; *provided, however,* that, notwithstanding the Filing of such motion, the Confirmation Order may not be vacated if each of the conditions to the Effective Date is either satisfied or duly waived before the Bankruptcy Court enters an order granting such motion. If the Confirmation Order is vacated pursuant to this Section 8.4, (a) the Plan shall be null and void in all respects, including with respect to: (i) the discharge of Claims and termination of Equity Interests pursuant to section 1141 of the Bankruptcy Code; (ii) the assumptions, assignments or rejections of Executory Contracts and Unexpired Leases pursuant to Section 6.1; (iii) the releases described in Section 9.6; and (iv) the substantive consolidation of the Debtors described in Article II; and (b) nothing contained in the Plan shall: (i) constitute a waiver or release of any Claims by or against, or any Interest in, the Debtors; or (ii) prejudice in any manner the rights of the Debtors or any other party in interest.

## ARTICLE IX

## EFFECT OF CONFIRMATION OF PLAN

**9.1    Term of Bankruptcy Injunction or Stays**

Unless otherwise provided, all injunctions or stays provided for in the Reorganization Cases under section 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order), shall remain in full force and effect until the Effective Date.

**9.2    Binding Effect**

Except as otherwise provided in section 1141(d)(3) of the Bankruptcy Code and subject to the occurrence of the Effective Date, on and after the Confirmation Date, the provisions of the Plan shall bind any holder of a Claim against, or Equity Interest in, the Debtors and such holder's

respective successors and assigns, whether or not the Claim or Equity Interest of such holder is impaired under the Plan and whether or not such holder has accepted the Plan.

## 9.3    Discharge of Debtors

All consideration distributed under the Plan shall be in exchange for, and in complete satisfaction, settlement, discharge, and release of, all Claims against and Equity Interests in the Debtors of any nature whatsoever or against any of the Debtors' assets or properties. Except as otherwise provided herein, pursuant to section 1141(d)(l) of the Bankruptcy Code, upon the Effective Date, all Claims against and Equity Interests in any of the Debtors shall be discharged and released. Except as otherwise provided herein, on the Effective Date, as to every discharged debt, Claim, or Equity Interest, all persons, entities, and governmental units (including, without limitation, any creditor or holder of a Claim or Equity Interest) shall be precluded from asserting against the Debtors, the Reorganized Debtors or New Arclin, or against the Debtors', the Reorganized Debtors' or New Arclin's assets or properties, all such debts, Claims, or Equity Interests and any other or further Claim based upon any document, instrument, or act, omission, transaction or other activity of any kind or nature that occurred prior to the Confirmation Date. The Confirmation Order shall be a judicial determination of discharge of all liabilities of the Debtors, subject to the occurrence of the Effective Date. In accordance with section 524 of the Bankruptcy Code, the discharge described herein and in section 1141 of the Bankruptcy Code shall act as an injunction against the commencement or continuation of any action, employment of process, or act to collect, offset or recover the Claims and Equity Interests discharged hereunder.

## 9.4    Settlement

Pursuant to Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided under the Plan, the provisions of the Plan shall constitute a good faith compromise and settlement of all claims or controversies relating to any distribution to be made pursuant to the Plan on account of any Allowed Claim. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, as of the Effective Date, of the compromise or settlement of all such claims or controversies and the Bankruptcy Court's finding that such compromise or settlement is in the best interests of the Debtors, Estates and their respective property and Claim and Interest holders and is fair, equitable and reasonable.

## 9.5    Injunction

Except as otherwise expressly provided in the Plan, the Confirmation Order or a separate order of the Bankruptcy Court, all entities who have held, hold or may hold Claims against or Equity Interests in any or all of the Debtors, are permanently enjoined, on and after the Effective Date, from (a) commencing or continuing in any manner any action or other proceeding of any kind with respect to any such Claim or Equity Interest, (b) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order against the Debtors on account of any such Claim or Equity Interest, (c) creating, perfecting or enforcing any encumbrance of any kind against the Debtors or against the property or interests in property of

the Debtors on account of any such Claim or Equity Interest, (d) asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from the Debtors or against the property or interests in property of the Debtors on account of any such Claim or Equity Interest and (e) commencing or continuing in any manner any action or other proceeding of any kind with respect to any claims and causes of action which are retained pursuant to the Plan. Such injunction shall extend to successors of the Debtors, including, without limitation, the Reorganized Debtors, New Arclin, and their respective properties and interests in property.

**9.6 Releases**

As part of this Plan, the releases set forth below shall be granted pursuant to this Plan and the Confirmation Order:

**9.7 Debtors' Releases**

**ON THE EFFECTIVE DATE, THE DEBTORS SHALL RELEASE AND BE PERMANENTLY ENJOINED FROM ANY PROSECUTION OR ATTEMPTED PROSECUTION OF ANY AND ALL CAUSES OF ACTION WHICH IT HAS OR MAY HAVE AGAINST ANY PRESENT OR FORMER DIRECTOR, OFFICER, EMPLOYEE OR DIRECT OR INDIRECT SHAREHOLDER OF THE DEBTORS; <u>PROVIDED</u>, <u>HOWEVER</u>, THAT THE FOREGOING SHALL NOT OPERATE AS A WAIVER OF OR RELEASE FROM ANY CAUSES OF ACTION ARISING OUT OF (I) ANY EXPRESS CONTRACTUAL OBLIGATION OWING BY ANY SUCH DIRECTOR, OFFICER, EMPLOYEE OR DIRECT OR INDIRECT SHAREHOLDER OF THE DEBTORS OR (II) THE WILLFUL MISCONDUCT OR GROSS NEGLIGENCE OF SUCH DIRECTOR, OFFICER, EMPLOYEE OR SHAREHOLDER IN CONNECTION WITH, RELATED TO, OR ARISING OUT OF THE REORGANIZATION CASES, THE PURSUIT OF CONFIRMATION OF THE PLAN, THE CONSUMMATION OF THE PLAN, THE ADMINISTRATION OF THE PLAN, OR THE PROPERTY TO BE DISTRIBUTED UNDER THE PLAN.**

**ON THE EFFECTIVE DATE, THE DEBTORS SHALL RELEASE AND BE PERMANENTLY ENJOINED FROM ANY PROSECUTION OR ATTEMPTED PROSECUTION OF ANY AND ALL CLAIMS AND CAUSES OF ACTION, INCLUDING ANY CLAIMS OR CAUSES OF ACTION, INCLUDING THE AVOIDANCE ACTIONS, WHICH THEY HAVE OR MAY HAVE AGAINST ANY LENDERS OR DIP LENDERS IN THEIR CAPACITY AS SUCH, OTPP AND THEIR RESPECTIVE MEMBERS, OFFICERS, DIRECTORS, AGENTS, FINANCIAL ADVISORS, ATTORNEYS, EMPLOYEES, PARTNERS, AFFILIATES AND REPRESENTATIVES AND THEIR RESPECTIVE PROPERTY IN CONNECTION WITH (I) ACTIONS TAKEN AS OR IN ITS CAPACITY OF BEING A LENDER, DIP LENDER OR DIRECT OR INDIRECT OWNER AND (II) THE REORGANIZATION CASES.**

ON THE EFFECTIVE DATE, AND EXCEPT AS OTHERWISE PROVIDED IN THE PLAN OR IN THE CONFIRMATION ORDER, THE DEBTORS, THE REORGANIZED DEBTORS, NEW ARCLIN, EACH LENDER AND DIP LENDER IN ITS CAPACITY AS SUCH, AND OTPP AND EACH OF THEIR RESPECTIVE MEMBERS, OFFICERS, DIRECTORS, AGENTS, FINANCIAL ADVISORS, ATTORNEYS, EMPLOYEES, PARTNERS, AFFILIATES AND REPRESENTATIVES AND THEIR RESPECTIVE PROPERTY SHALL BE RELEASED FROM ANY AND ALL CLAIMS, OBLIGATIONS, RIGHTS, CAUSES OF ACTION, AVOIDANCE ACTIONS AND LIABILITIES WHICH THE DEBTORS, OR THE REORGANIZED DEBTORS, MAY BE ENTITLED TO ASSERT, WHETHER FOR TORT, FRAUD, CONTRACT, VIOLATIONS OF FEDERAL OR STATE SECURITIES LAWS, OR OTHERWISE, WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, EXISTING OR THEREAFTER ARISING, BASED IN WHOLE OR IN PART UPON ANY, ACT OR OMISSION, TRANSACTION, OR OTHER OCCURRENCE TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE, INCLUDING, BUT NOT LIMITED TO, THE NEGOTIATION, SOLICITATION, CONFIRMATION AND CONSUMMATION OF THE PLAN; PROVIDED, HOWEVER, THAT NOTHING SHALL RELEASE ANY PERSON FROM ANY CLAIMS, OBLIGATIONS, RIGHTS, CAUSES OF ACTION, OR LIABILITIES BASED UPON ANY ACT OR OMISSION IN CONNECTION WITH, RELATING TO, OR ARISING OUT OF, THE REORGANIZATION CASES, THE SOLICITATION OF ACCEPTANCES OF THE PLAN, THE PURSUIT OF CONFIRMATION OF THE PLAN, THE CONSUMMATION OF THE PLAN, THE ADMINISTRATION OF THE PLAN, OR THE PROPERTY TO BE DISTRIBUTED UNDER THE PLAN ARISING OUT OF SUCH PERSON'S GROSS NEGLIGENCE OR WILLFUL MISCONDUCT.

**9.8    Other Releases**

EACH HOLDER OF A CLAIM RELATED TO THE DEBTORS (WHETHER OR NOT ALLOWED) AGAINST, OR EQUITY INTEREST IN, THE DEBTORS, AND EACH PERSON OR ENTITY PARTICIPATING IN EXCHANGES AND DISTRIBUTIONS UNDER OR PURSUANT TO THE PLAN, FOR ITSELF AND ITS RESPECTIVE SUCCESSORS, ASSIGNS, TRANSFEREES, CURRENT AND FORMER OFFICERS, DIRECTORS, AGENTS AND EMPLOYEES, IN EACH CASE IN THEIR CAPACITY AS SUCH, SHALL BE DEEMED TO HAVE RELEASED ANY AND ALL CLAIMS AND CAUSES OF ACTION AGAINST (A) THE DEBTORS, THE REORGANIZED DEBTORS OR NEW ARCLIN, (B) THE LENDERS AND THE DIP LENDERS IN THEIR CAPACITY AS SUCH, (C) OTPP AND (D) ANY OF THEIR RESPECTIVE OFFICERS, DIRECTORS, EMPLOYEES, ATTORNEYS, ADVISORS, PROFESSIONALS OR AGENTS ARISING PRIOR TO THE EFFECTIVE DATE.

ON THE EFFECTIVE DATE, IN CONSIDERATION FOR THE OBLIGATIONS OF THE DEBTORS AND THE REORGANIZED DEBTORS UNDER THE PLAN AND THE DISTRIBUTIONS TO BE DELIVERED IN CONNECTION WITH THE PLAN, ALL HOLDERS OF CLAIMS AGAINST OR EQUITY INTERESTS IN THE DEBTORS

SHALL BE PERMANENTLY ENJOINED FROM BRINGING ANY ACTION AGAINST THE DEBTORS, THE REORGANIZED DEBTORS, NEW ARCLIN, THE LENDERS, THE DIP LENDERS OR OTPP, AND THEIR RESPECTIVE DIRECTORS, OFFICERS, AGENTS, FINANCIAL ADVISORS, ATTORNEYS, OTHER PROFESSIONALS, EMPLOYEES, PARTNERS, MEMBERS, SUBSIDIARIES, MANAGERS, AFFILIATES AND REPRESENTATIVES SERVING IN SUCH CAPACITY AS OF THE CONFIRMATION DATE, AND THEIR RESPECTIVE PROPERTY, IN RESPECT OF ANY CLAIMS, OBLIGATIONS, RIGHTS, CAUSES OF ACTION, DEMANDS, SUITS, PROCEEDINGS, AND LIABILITIES RELATED IN ANY WAY TO THE DEBTORS, THE REORGANIZATION CASES, THE PLAN OR THE DISCLOSURE STATEMENT; PROVIDED, HOWEVER, NOTHING IN THIS SECTION SHALL BE CONSTRUED TO RELEASE OR EXCULPATE ANY PERSON OR ENTITY FROM FRAUD, GROSS NEGLIGENCE, WILLFUL MISCONDUCT, CRIMINAL CONDUCT, UNAUTHORIZED USE OF CONFIDENTIAL INFORMATION THAT CAUSES DAMAGES OR FOR PERSONAL ULTRA VIRES ACTS.

### 9.9    Knowledge of Claims

EACH PARTY TO WHICH THIS SECTION APPLIES SHALL BE DEEMED TO HAVE GRANTED THE RELEASES SET FORTH IN THIS SECTION NOTWITHSTANDING THAT IT MAY HEREAFTER DISCOVER FACTS IN ADDITION TO, OR DIFFERENT FROM, THOSE WHICH IT NOW KNOWS OR BELIEVES TO BE TRUE, AND WITHOUT REGARD TO THE SUBSEQUENT DISCOVERY OR EXISTENCE OF SUCH DIFFERENT OR ADDITIONAL FACTS, AND SUCH PARTY EXPRESSLY WAIVES ANY AND ALL RIGHTS THAT IT MAY HAVE UNDER ANY STATUTE OR COMMON LAW PRINCIPLE, WHICH WOULD LIMIT THE EFFECT OF SUCH RELEASES TO THOSE CLAIMS OR CAUSES OF ACTION ACTUALLY KNOWN OR SUSPECTED TO EXIST AT THE TIME OF EXECUTION OF THE RELEASE.

### 9.10    The Cadillac Fairview Corporation Limited Indemnity

Notwithstanding the foregoing releases set forth herein in sections 9.6 through 9.8, OTPP shall not be released from any obligations it may have under the OTPP Indemnity; *provided, however*, all rights, claims and defenses that OTPP may have with respect to the OTPP Indemnity shall be expressly preserved.

## ARTICLE X

## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain such jurisdiction over the Reorganization Cases after the Effective Date as is legally permissible, including jurisdiction to:

**10.1.1** Allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim; the resolution of any objections to the allowance, priority or classification of Claims or Interests;

**10.1.2** Grant or deny any applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Plan for periods ending on or before the Effective Date;

**10.1.3** Resolve any matters related to the assumption, assumption and assignment or rejection of any Executory Contract or Unexpired Lease to which any Debtor is a party or with respect to which any Debtor may be liable and to hear, determine and, if necessary, liquidate any Claims arising therefrom, including any Cure Amount Claims;

**10.1.4** Ensure that distributions to holders of Allowed Claims are accomplished pursuant to the provisions of the Plan;

**10.1.5** Decide or resolve any motions, adversary proceedings, contested or litigated matters and any other matters, and grant or deny any motions or applications involving the Debtors, the Reorganized Debtors or New Arclin that may be pending on the Effective Date or brought thereafter;

**10.1.6** Enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all contracts, instruments, releases and other agreements or documents entered into or delivered in connection with the Plan, the Disclosure Statement or the Confirmation Order;

**10.1.7** Resolve any cases, controversies, suits or disputes that may arise in connection with the consummation, interpretation or enforcement of the Plan or any contract, instrument, release or other agreement or document that is entered into or delivered pursuant to the Plan or any Entity's rights arising from or obligations incurred in connection with the Plan or such documents;

**10.1.8** Modify the Plan before or after the Effective Date pursuant to section 1127 of the Bankruptcy Code, modify the Disclosure Statement, the Confirmation Order or any contract, instrument, release or other agreement or document entered into or delivered in connection with the Plan, the Disclosure Statement or the Confirmation Order, or remedy any defect or omission or reconcile any inconsistency in any Bankruptcy Court order, the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release or other agreement or document entered into, delivered or created in connection with the Plan, the Disclosure Statement or the Confirmation Order, in such manner as may be necessary or appropriate to consummate the Plan;

**10.1.9** Issue injunctions, enforce the injunctions contained in the Plan and the Confirmation Order, enter and implement other orders or take such other actions as may be necessary or

appropriate to restrain interference by any Entity with consummation, implementation or enforcement of the Plan or the Confirmation Order;

**10.1.10**  Enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason or in any respect modified, stayed, reversed, revoked or vacated or distributions pursuant to the Plan are enjoined or stayed;

**10.1.11**  Determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release or other agreement or document entered into or delivered in connection with the Plan, the Disclosure Statement or the Confirmation Order;

**10.1.12**  Enter a final decree or decrees closing the Reorganization Cases; and

**10.1.13**  Determine matters concerning state, local and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code, including any Disputed Claims for taxes.

## ARTICLE XI

## MISCELLANEOUS PROVISIONS

### 11.1   Governing Law

Except to the extent the Bankruptcy Code, Bankruptcy Rules or other federal law is applicable, or to the extent an exhibit to the Plan provides otherwise, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of New York, without giving effect to the principles of conflicts of law of such jurisdiction.

### 11.2   Corporate Action

On the Effective Date, all matters provided for under the Plan that would otherwise require approval of the equity holders, members or directors of one or more of the Debtors, the Reorganized Debtors or New Arclin, including, without limitation, the issuance of the New Equity Interests, the New Warrants, the New Term Debt, the Exit Facility, the New Management Incentive Plan, and the Restructuring Transactions effectuated pursuant to the Plan, shall be deemed to have occurred and shall be in effect from and after the Effective Date pursuant to the applicable corporation, company or limited liability company law of the states or countries in which the Debtors, the Reorganized Debtors and New Arclin are (or shall be) incorporated or established as limited liability companies or partnerships, without any requirement of further action by the equity holders, members or directors of the Debtors, Reorganized Debtors or New Arclin. On the Effective Date, or as soon thereafter as is practicable, the Reorganized Debtors or New Arclin shall, if required, file the Reorganized Debtors' and New Arclin's Organizational Documents with the Secretary of State or other appropriate authority of the state or other jurisdiction in which such entity is (or shall be) formed, in accordance with the applicable law of such state or jurisdiction.

### 11.3 Exemption from Transfer Tax

Pursuant to section 1146(a) of the Bankruptcy Code, the issuance, transfer or exchange of notes or equity securities under the Plan, the creation of any mortgage, deed of trust or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, including, without limitation, any merger agreements or agreements of consolidation, deeds, bills of sale or assignments of real or personal property executed in connection with any of the transactions contemplated under the Plan, shall not be subject to any stamp, real estate transfer, mortgage recording, sales, use or other similar tax. In addition, each of the relevant state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

### 11.4 Severability of Plan Provisions

If prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision then shall be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

### 11.5 Modification of the Plan and Exhibits

Subject to the restrictions on modifications set forth in section 1127 of the Bankruptcy Code, the Debtors reserve the right to alter, amend or modify the Plan and the Exhibits to the Plan, including the Plan Supplement, in each case with the consent of the Required First Lien Lenders, before the substantial consummation of the Plan.

### 11.6 Termination of Committees

The appointment of the Committee shall terminate on the Confirmation Date, except that the Committee may appear at the hearing to consider applications for final allowances of Professional Fee Claims.

### 11.7 Revocation of the Plan

The Debtors reserve the right to revoke or withdraw the Plan as to any or all of the Debtors prior to the Confirmation Date. If the Debtors revoke or withdraw the Plan as to any or all of the

Debtors, or if Confirmation as to any or all of the Debtors does not occur, then, with respect to such Debtors, the Plan shall be null and void in all respects, and nothing contained in the Plan shall: (i) constitute a waiver or release of any claims by or against, or any Interests in, such Debtors; or (ii) prejudice in any manner the rights of any Debtors or any other party in interest.

## 11.8   Successors and Assigns

The rights, benefits and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of; any heir, executor, administrator, successor or assign of such Entity.

## 11.9   Relationship Between Plan and Disclosure Statement

To the extent the Plan is inconsistent with the Disclosure Statement, the provisions of the Plan shall be controlling.

## 11.10   Plan Supplement

The form of New Arclin's Organizational Documents and the Stockholders Agreement shall be contained in the Plan Supplement. The Plan Supplement also shall contain the terms of the New Warrants, the Exit Facility, the New Term Debt and the Restructuring Transactions. All documents included in the Plan Supplement shall be filed with the clerk of the Bankruptcy Court at least five (5) Business Days before the Voting Deadline. Upon its filing with the Bankruptcy Court, the Plan Supplement may be inspected in the office of the Bankruptcy Court during normal court hours. Holders of Claims or Equity Interests may obtain a copy of the Plan Supplement upon written request to the Debtors in accordance with Section 11.12 of the Plan or may view it online at http://www.kccllc.net/arclin. The Debtors reserve their rights to amend the Plan Supplement from time to time and to file any such amendments with the Bankruptcy Court.

## 11.11   Exculpation

None of (a) the Debtors, the Reorganized Debtors or New Arclin, (b) the Lenders, (c) the DIP Lenders, (d) OTPP and (e) any of their respective members, officers, directors, employees, advisors, professionals, attorneys or agents or any of their successors and assigns shall have or incur any liability to any holder of a Claim or Equity Interest, or other party in interest, or any of their respective members, officers, directors, employees, advisors, professionals, attorneys or agents or any of their successors and assigns, for any act or omission in connection with, related to, or arising out of, the Reorganization Cases, the pursuit of confirmation of the Plan, the consummation of the Plan or the administration of the Plan or the property to be distributed under the Plan, including without limitation, the negotiation and solicitation of the Plan, except for willful misconduct or gross negligence, and, in all respects, the Debtors, the Reorganized Debtors and each of their respective members, officers, directors, employees, advisors, professionals, attorneys or agents shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.

## 11.12   Service of Documents

Any pleading, notice or other document required by the Plan or Confirmation Order to be served on or delivered to the Debtors or, on or after the Effective Date, the Reorganized Debtors, shall be in writing and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

If to the Debtors or Reorganized Debtors:

> Arclin US Holdings Inc.
> 5865 McLaughlin Road, Unit 3
> Mississauga, ON, L5R IB8
> Canada
> Attention: Chief Financial Officer
> Telecopier No.: 905.712.0900
> Email: scott.maynard@arclin.com
>
> with a copy to
>
> Brian E. Greer
> Andrew L. Buck
> DECHERT LLP
> 1095 Avenue of the Americas
> New York, New York 10036
> brian.greer@dechert.com

[Remainder of page intentionally left blank]

Dated: September 21, 2009

Respectfully submitted,

ARCLIN US HOLDINGS INC. (for itself and on behalf of the other Debtors)

By: /s/ D. Scott Maynard
Name: D. Scott Maynard
Title: Secretary and Treasurer

COUNSEL:

*[signature]*

Frederick B. Rosner (DE 3995)
MESSANA ROSNER & STERN LLP
1000 N. West Street, Suite 1200
Wilmington, Delaware 19801
Telephone: (302) 777-1111
Email: frosner@mrs-law.com

-and-

Glenn E. Siegel
Brian E. Greer
Andrew L. Buck
DECHERT LLP
1095 Avenue of the Americas
New York, New York 10036
Telephone: (212) 698-3500
Facsimile: (212) 698-3599
Email: brian.greer@dechert.com

ATTORNEYS FOR DEBTORS AND DEBTORS IN POSSESSION