UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re : | CHAPTER 11 |
| : | (Jointly Administered) |
| **ARCLIN US HOLDING, INC, *et. al*[1]** : | |
| : | Case No. 09-12628 (KJC) |
| Debtors : | |

## MEMORANDUM[2]

### BY: KEVIN J. CAREY, UNITED STATES BANKRUPTCY JUDGE

Arclin US Holding, Inc. and related entities (the "Debtors") filed voluntary petitions under chapter 11 of the United States Bankruptcy Code on July 27, 2009. By letter to the Court dated August 10, 2009, Steve Phillips ("Phillips"), a former employee of Arclin Surfaces, Inc., asked for reinstatement of certain payments and medical benefits that the Debtors had been paying to him pursuant to a prepetition separation agreement. Phillips' letter was docketed as a "Motion for Reinstatement of Severance Pay and Medical Benefits" (docket no. 69) (the "Reinstatement Motion") and a hearing was scheduled for September 8, 2009. The Debtors filed a response to the Reinstatement Motion (docket no. 124), arguing that the payments had been made pursuant to a prepetition non-executory severance agreement and that Phillips held an unsecured, non-priority claim against the Debtors' estate.

At the conclusion of the September 8, 2009 hearing on the Reinstatement Motion, I

---

[1]The following chapter 11 debtors are being jointly administered in this case: Arclin US Holdings, Inc., Mamorandum LLC, Arclin Chemicals Holding Inc., Arclin Industries U.S.A. Inc., Arclin Fort Smith Inc., Arclin U.S.A. Inc. and Arclin Surfaces, Inc. *See* Order dated July 28, 2009 (docket no. 29).

[2]This court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b) and §157(a). Venue is proper pursuant to 28 U.S.C. §1409. This adversary proceeding involves a core matter pursuant to 28 U.S.C. §157(b)(1) and (b)(2)(A) and (B).

indicated that the Debtor's position was correct and that the Reinstatement Motion should be denied; however, upon reflection, I ordered the parties to brief the issue of whether Bankruptcy Code §1114 preserves, in any part or amount, the benefits provided by the Debtors to Phillips (Order dated September 8, 2009, docket no. 151), a subject which neither party had addressed at the hearing. On September 18, 2009, the Debtors filed a letter brief addressing the §1114 (docket no. 180) and Phillips filed his response on September 25, 2009 (docket no. 200).

For the reasons set forth herein, I conclude that the medical benefits provided to Phillips as part of an early retirement package are protected by Bankruptcy Code §1114 and cannot be modified by the Debtors, except as provided in §1114. The other payments to Phillips - - for salary and car allowance - - are not protected by §1114.

## Background

The parties do not dispute the material facts of this matter. In January 2009, the Debtors instituted a company-wide work force reduction (the "Reduction"). Thirty-nine of the Debtors' employees, including Phillips, were terminated as a result of the Reduction. The Debtors offered different packages, some including severance payments and/or medical benefits, to those employees.

By letter dated January 26, 2009, from the Debtors' business director to Phillips, the Debtors agreed to provide Phillips with "an early retirement package . . . in recognition of your 41 years of service."[3] Among other things, the letter stated:

> Effective February 1, 2009 you will be on the Arclin Retiree Benefit Plan and we will pay your health premiums for 29 months. You will be eligible to continue your retiree benefit coverage after the 29 months at your cost.

---

[3] A copy of the January 26, 2009 letter was attached to the Reinstatement Motion.

2

Phillips was also to receive payments equal to two years' salary and two years' car allowance.

In return for the early retirement package, the Debtors required Phillips to sign a "Confidential Separation Agreement and Full Release of All Claims" dated January 28, 2009 (the "Separation Agreement").[4] The Separation Agreement provided, in pertinent part, that (i) Phillips last day of work would be January 30, 2009, (ii) Phillips would receive the gross sum of $251,018.00, representing two years of separation pay, and $43,400, representing two years of car allowance, payable on a salary continuance basis, less appropriate withholding, and (3) Phillips would be added to the Arclin Retiree Benefit Plan and the Debtors would pay the health premiums for 29 months. The Debtors made payments and provided medical benefits in accordance with the terms of the Separation Agreement until the bankruptcy filing on July 27, 2009.[5]

The Separation Agreement also included a "non-competition and non-solicitation" provision. In their Response to the Reinstatement Motion, the Debtors stated that they are willing to release Phillips from this provision, "since the Debtors and their estates are no receiving any material benefit from Mr. Phillips under the Non-Compete." Response, ¶6. This waiver will be memorialized in the attached Order.

---

[4] A copy of the Separation Agreement was attached to the Reinstatement Motion.

[5] In its September 18, 2009 letter brief, the Debtors admitted that as of the petition date of July 27, 2009, Phillips was owed the following amounts under the Separation Agreement: (i) $190,677.12 for the salary payments, (ii) $32,549.55 for the car allowance payment, and (iii) $18,568.887 for costs under the medical plan.

3

Discussion

"Section 1114 was added to the Bankruptcy Code by the Retiree Benefits Bankruptcy Protection Act of 1988 . . .to protect the rights of retirees to continue to receive certain benefits." 7-1114 COLLIER ON BANKRUPTCY ¶1114.01 (15th ed. rev. 2009).[6] This section "requires that a Chapter 11 debtor continue to pay all retiree benefits unless either the trustee or debtor in possession and an authorized representative of the retirees agree to a proposed modification or, absent such agreement, the trustee or the debtor in possession convinces the court that a proposed modification is necessary to permit the debtor's reorganization and is equitable." *In re Farmland Ind., Inc.*, 294 B.R. 903, 919 (Bankr.W.D.Mo. 2003). Section 1114 defines "retiree benefits" as follows:

> (a) For purposes of this section, the term "retiree benefits" means payments to any entity or person for the purpose of providing or reimbursing payments for retired employees and their spouses and dependents, for medical, surgical, or hospital care benefits, or benefits in the event of sickness, accident, disability, or death under any plan, fund, or program (through the purchase of insurance or otherwise) maintained or established in whole or in part by the debtor prior to filing a petition commencing a case under this title.

11 U.S.C. §1114(a). The Separation Agreement payments to Phillips for two years of salary and car allowance are not "retiree benefits" within the plain meaning of the definition, because they

---

[6] Section 1114 was adopted on June 16, 1988 as part of the Retiree Benefits Bankruptcy Protection Act of 1988, Pub.L. 100-334, 102 Stat.610-613 (1988), and is applicable to all Chapter 11 cases commenced after June 16, 1988. This legislation was enacted in response to the termination of the health and life insurance benefits of approximately 79,000 retirees in the *LTV Corporation* Chapter 11 case. *See LTV Steel Co., Inc. v. United Mine Workers of America (In re Chateaugay Corp.)*, 922 F.2d 86, 88-89 (2d Cir. 1990). Pursuant to this legislation, a trustee in bankruptcy or a debtor in possession is required to continue to pay retiree benefits throughout reorganization under a "plan, fund, or program" and at the levels maintained prior to the filing of the bankruptcy case, until or unless a modification is agreed to by the parties or ordered by the court.
*In re New York Trap Rock Corp.*, 126 B.R. 19, 21-22 (Bankr.S.D.N.Y. 1991).

are not medical benefits. *See also In re Exide Technologies*, 378 B.R. 762, 768 (Bankr.D.Del. 2007), *Farmland*, 294 B.R. at 919. I now must decide whether the agreement to pay 29 months of health insurance premiums under the Arclin Retiree Benefit Plan (the "Premiums") falls within the definition of retiree benefits in §1114(a).

The Debtors argue that the Premium payments are not "retiree benefits" under §1114(a) because (i) courts previously looked to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§101 *et seq*, to define the terms "plan, fund or program" in §1114(a), and the Premiums do not fall within the ERISA definition; and (ii) the Debtors' offer to pay the Premiums were as a result of Phillips' termination, along with many other employees, in the Reduction, and not in connection with his retirement.

The terms "plan, fund or program," used in §1114(a), are not defined in the Bankruptcy Code; however, because the same terms are used in ERISA's definition of an "employee welfare benefit plan," some courts have looked to ERISA cases to define "retiree benefits."[7] *See, e.g., In re New York Trap Rock Corp.*, 126 B.R. 19, 22 (Bankr.S.D.N.Y. 1991). The Debtors argue that the Separation Agreement payments would not meet the definition of an ERISA employee

---

[7]ERISA provides in 29 U.S.C. §1002(1) as follows:
The terms "employee welfare benefit plan" and "welfare plan" mean *any plan, fund or program*, which was heretofore or is hereafter established or maintained by an employer or by an employee organization , or by both, to the extent that such *plan, fund or program* was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, appreticeship or other training programs, or day care centers, scholarship funds, or pre-paid legal service, or (B) any benefit described in section 186(c) of this title (other than pensions on retirement or death, and insurance to provide such pensions).
(Emphasis added).

welfare benefit plan.[8]

However, in *Howard Delivery Service, Inc. v. Zurich American Ins. Co.*, 547 U.S. 651, 126 S.Ct. 2105, 165 L.Ed.2d 110 (2006), the United States Supreme Court determined that it is not always appropriate to use ERISA to define terms used in the Bankruptcy Code. In *Howard*, the Supreme Court considered the definition of an "employee benefit plan" in the context of deciding whether unpaid workers compensation claims were entitled to priority status under Bankruptcy Code §507(a)(5). The Court was urged to borrow the encompassing definition of "employee benefit plan" contained in ERISA. *Id.*, at 660. The *Howard* Court noted that other federal courts have questioned whether "ERISA is appropriately used to fill in blanks in a Bankruptcy Code provision," citing (among other cases) *In re Birmingham-Nashville Express, Inc.*, 224 F.3d 511 (6th Cir. 2000)(noting a division of opinion, but concluding that decisions rejecting incorporation of ERISA's "employee benefit plan" definition into §507(1)(5) "have the better of the argument"), *In re HLM Corp.*, 62 F.3d 224 (8th Cir. 1995)("[T]he ERISA definition and associated court guidelines were designed to effectuate the purpose of ERISA, not the Bankruptcy Code." (internal quotation marks omitted)), *In re Southern Star Foods, Inc.*, 144 F.3d 712 (10th Cir. 1998)(same). The Supreme Court concluded that it would not borrow a definition

---

[8] The Debtors argue that the Separation Agreement payments are similar to the "buyout plan" in *Angst v. Mack Trucks, Inc.*, 969 F.2d 1530 (3d Cir. 1992), which paid departing employees a lump sum of $75,000 and a year of continued benefits in exchange for employees voluntarily leaving Mack's employ. *Id.* at 1532. The Third Circuit Court of Appeals determined that the buyout plan did not qualify as an ERISA plan because

> the continued disbursement of benefits and the one-time lump-sum payment under the instant Mack plan did not require the creation of a new administrative scheme and did not impose new administrative requirements on an existing administrative scheme, but rather simply required the continuation of an existing procedure. . . .

*Id.* at 1540 citing *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1987).

from ERISA in analyzing Bankruptcy Code §507(a)(5), writing:

> We follow the lead of an earlier decision *United States v. Reorganized CF & I Fabricators of Utah, Inc.,* 518 U.S. 213, 219, 116 S.Ct. 2106, 135 L.3d.2d 506 (1996), in noting that "here and there in the Bankruptcy Code Congress has included specific directions that establish the significance for bankruptcy law of a term used elsewhere in the federal statutes." *Id.,* at 219-220, 116 S.Ct. 2106. No such directions are contained in §507(a)(5), and we have no warrant to write them into the text.

*Howard,* 547 U.S. at 662, 126 S.Ct. at 2113. No such directions appear in Bankruptcy Code §1114. Therefore, I conclude that the definition of "retiree benefits" should not be based "on a definition borrowed from a statute designed without bankruptcy in mind," but on the "essential character" of the Premiums. *Howard,* 547 U.S. at 662, 126 S.Ct. at 2113.

The Debtors argue that Premiums are not protected benefits under §1114(a) because (i) the Separation Agreement was similar to other severance agreements provided to severed employees in connection with the Reduction, (ii) the Separation Agreement was offered to Phillips in connection with the company-wide work force reduction and not in connection with retirement, (iii) the essential purpose of the Separation Agreement was to provide Phillips with severance and not retirement benefits, and (iv) the Debtors did not intend to classify Phillips as a retiree. In effect, the Debtors argue that the essential character of the Separation Agreement is a severance package, not retirement benefits. Despite these arguments, the expressed intention of the January 26, 2009 letter was to offer Phillips "an early retirement package . . . in recognition of [his] 41 years of service." The agreement placed Phillips in the Arclin Retiree Benefit Plan for health insurance benefits. This record supports a finding that, notwithstanding what other employees received, the Debtors offered Phillips retirement benefits through the Separation Agreement.

Moreover, the essential character of the Premiums fall within the plain language of "retiree benefits" in §1114(a). Prior to the bankruptcy filing, the Debtors agreed to pay Phillips' health insurance premiums to participate in the Arclin Retiree Benefit Plan for 29 months. The Premiums are payment of a retiree's medical benefits under a plan established in whole or in part by the Debtors. The Premiums are protected by provisions of §1114(a).

Finally, §1114(m) provides that the section does not apply to any retiree:

> if such retiree's gross income for the twelve months preceding the filing of the bankruptcy petition equals or exceeds $250,000, unless such retiree can demonstrate to the satisfaction of the court that he is unable to obtain health, medical, life, and disability coverage for himself, his spouse, and his dependents who would otherwise be covered by the employer's insurance plan, comparable to the coverage provided by the employer on the day before the filing of a petition under this title.

11 U.S.C. §1114(m). Nothing in the record indicates - - and the Debtors do not assert - - that Phillips falls within the $250,000 exclusion.

## Conclusion

For the foregoing reasons, I conclude that the Premiums are "retiree benefits" as defined in §1114(a) and that the Debtors cannot modify or terminate those benefits, except as provided in §1114. Pursuant to §1114(e)(2), the Debtors shall reimburse Phillips immediately for any payments he made personally for medical benefits covered by the Separation Agreement, and the Debtors shall continue to pay all Premiums going forward, unless or until any termination or modification is approved by order of this Court pursuant to the procedures set forth in §1114(d), (g) or (h).

An appropriate order follows.

BY THE COURT:

_____
KEVIN J. CAREY
UNITED STATES BANKRUPTCY JUDGE

Dated: October 9, 2009